## SCHOLTE *v.* ROSIERS *et al.*

Where a deed conveyed certain real estate by the following description: "Section thirty-six (36), section thirty-five (35) east half, and southwest quarter and east half of northwest quarter of section nine (9), township seventy-seven, range eighteen west; and where it was claimed, that the deed conveyed the *whole* of section thirty-five, and the east half, and southwest quarter, and east half of northwest quarter of section nine; *Held*, That the deed conveyed only the east half of section thirty-five, and the southwest quarter, and east half of northwest quarter of section nine.

*Appeal from the Marion District Court.*

IN Chancery.    In September, 1848, the complainant conveyed to the respondent Rosiers, certain real estate in Marion county.    On the 29th day of May, 1849, he, by

deed of general warranty, conveyed certain lands in the same county, to the respondent Zeelt.

In November, 1855, the said Zeelt commenced an action against complainant, on the covenants of warranty contained in her said deed, alleging that the title to one half section of the land therein described had failed, and that complainant had previously conveyed the same to said Rosiers, by said deed of September, 1848. Thereupon complainant filed this bill, making said Zeelt and Rosiers parties defendants, setting forth that the said half section of land never was intended to be conveyed to Rosiers; and that the said deed to Rosiers, in the description of the land, may be uncertain and ambiguous in its meaning, and if held to embrace said half section, then it so describes it by mistake, which is well known to said Rosiers; for that in truth and in fact, it was well known and understood by the said Rosiers, as well as complainant, at the time of said conveyance, that the said land was not designed to be conveyed by such deed. An injunction was prayed for, and relief general and special. The injunction was granted, and the bill answered by both respondents. Rosiers denies the alleged mistake, and insists that by his deed, complainant did convey the said land to him. The cause was heard upon bill, answer, replication, exhibits, and depositions, the injunction made perpetual, and Rosiers decreed to release all claim to said land. From said decree, Rosiers appeals. The other material facts, appear in the opinion of the court.

*W. H. & J. A. Seevers* and *E. W. Eastman,* for the appellant.

1. There is no ambiguity in the deed. A careful inspection of it will make this clear. The plaintiff, however, insists that there is. For the purpose of solving any doubts that may exist upon this point, we refer to a few general rules which we regard as well settled.

2. All deeds are to be construed favorable to, and as near the apparent intention of the parties as possible. This apparent intention is to be arrived at from the words of the

deed; no other words are to be added or substituted. 2 Cruise, 295, top, § 2 and note 1; 1 Greeenleaf Ev. §§ 277 and 282; 2 Domat, § 3173; *Child* v. *Ficket*, 4 Maine, 408; *Child* v. *Wells*, 13 Pick. 121.

3. Where the intention is clear, too minute a stress ought not to be laid on the strict and precise meaning of the words. 2 Cruise, 297, top, § 4, particularly note 1; *Ewing* v. *Burnet*, 11 Pet. 41.

4. The terms of every written instrument, are to be understood in their plain, ordinary and popular sense, unless they have generally, in respect to the subject matter, as by the known usage of trade, or the like, acquired a peculiar sense, distinct from the popular sense of the same words. 1 Greenl. Ev. § 278; *Choate* v. *Burnham*, 7 Pick. 274; 1 Greenl. Ev. §§ 299 and 301, note 1; *Robertson* v. *French*, 4 East; 2 Domat, § 3173, and instance there given; *Comstock* v. *Van Dusen*, 5 Pick. 166.

5. The construction ought to be on the entire deed, and not merely on any particular part of it. Therefore, every part of a deed, ought, if possible, to take effect, and every word operate. 2 Cruise, 299, top, § 6; *Jackson* v. *Blodgett*, 16 Johns. 172; *Child* v. *Ficket*, 4 Maine, 408; *City of Alton* v. *Ill. Trans. Co.*, 12 Ill. 58.

6. A deed is always construed most strongly against the grantor. Where a deed may enure in different ways, the person to whom it is made, shall have his election which way to take it. 2 Cruise, 302, top, § 13; Same, 313, top, § 49; *Cutler* v. *Tufts*, 3 Pick. 272; *Salisbury* v. *Andrew*, 19 Pick. 250; *Doe* v. *Nixon*, 9 East, 15; *Buchanan's Lessee* v. *Stewart*, 3 Har. & John. 329; *Jackson* v. *Blodgett*, 16 Johns. 172; *City of Alton* v. *Ill. Trans. Co.*, 12 Ill. 58.

7. At the present day, a legal instrument shall not be construed by the acts or declarations of the parties. 2 Cruise, 306, § 23; *Revere* v. *Leonard*, 1 Mass. 92; *Ingulden* v. *May*, 7 East, 237; *Allen* v. *Kingsbury*, 16 Pick. 235; *Parsons* v. *Miller*, 15 Wend. 561; *Clark* v. *Wethey*, 19 Ib. 320; *Adams* v. *Rockwell*, 16 Ib. 285; *Van Wyck* v. *Wright*, 18 Ib. 158; *Bayham* v. *Gray*, 3 Vesey, 292; *Eaton* v. *Lyon*,

Ib. 690; *Moore* v. *Foley*, 6 Ib. 232; *Jackson* v. *Sherman*, 6 Johns. 21; *Salisbury* v. *Andrew*, 19 Pick. 250; *Comstock* v. *Van Dusen*, 5 Ib. 166; *Mosely* v. *Mosely*, 5 Vesey, 258; 4 Phillipps' Ev. note, 286; *Jackson* v. *Carey*, 16 Johns. 302; *Jackson* v. *McVey*, 15 Ib. 236.

8. The petition does not charge that there was a parol agreement adopting a certain line, or a practical location and acquiescence therein. But if it did so charge, the evidence would not sustain it. *Parsons* v. *Miller*, 15 Wend. 561; *Clark* v. *Wethey*, 19 Ib. 320; *Adams* v. *Rockwell*, 16 Ib. 285.

9. There is no distinction between law and equity, as to the rules to be observed in the construction of written instruments, or allowing parol evidence, acts or declarations of the parties, to vary or control such construction, except in cases of fraud, accident or mistake. 2 Story Eq. Jur. § 1531.

10. The mistake averred in the petition, is indefinite. How it occurred—whose fault it was—is not shown; nor are there any facts shown. We claim that the petition is not sufficient—it should have set forth the facts upon which the mistake is founded, so that we could take issue thereon. We regard it as well settled, that a defective bill in Chancery will be dismissed at the hearing. But, passing this point, with a brief notice, we say that the mistake as averred and proved, is a mistake of law and not of fact—therefore, will not be corrected. *Pierson* v. *Armstrong*, 1 Iowa, 288; 1 Story's Equity Jur. § 111; *Thomas* v. *McCormack*, 9 Dana, 109; *Thompson* v. *Patton*, 5 Litt. 74; *Hunt* v. *Rousmanier*, 1 Pet. 1; *Wheaton* v. *Wheaton*, 9 Cow. 96; *Osborn* v. *Phelps*, 19 Ib. 70; *Elder* v. *Elder*, 10 Maine, (1 Fairfield,) 80; *Storrs* v. *Baker*, 6 John. Ch. 167; *Shotwell* v. *Murray*, 1 John Ch. 512; *Lyon* v. *Richmond*, 2 Ib. 51; *Dwight* v. *Pomeroy*, 17 Mass. 302; *Doyel et al.* v. *Leas et al.*, 4 Scam. 255, 256; *Garwood* v. *Eldridge*, 1 Green, (N. J.) 150.

11. A mistake of fact in a deed, will not be corrected by a court of equity, as of course. The proof of mistake must be clear and conclusive. The testimony must clearly show

what the mistake is, and how it occurred. It must be a mutual mistake, and must not have been caused by the negligence of the party asking that the mistake be corrected. *W. R. R.* v. *Babcock*, 6 Met. 346; *Marks* v. *Pell*, 1 Johns. Ch. 593; *Lyman & Lyman* v. *U. S. Ins. Co.*, 2 Ib. 630; 17 Johns. 373; 1 Story Eq. Jur. §§ 152, 160; *Souverbye* v. *Arden*, 1 John. Ch. 240; *Townsend* v. *Stangroom*, 6 Vesey, 333, 334; *Doran* v. *Ross*, 1 Ib. 58. `

*Knapp & Caldwell*, for the appellee. Their brief cited no authorities.

WRIGHT, C. J.—Several questions, very important and intricate in their character, have been discussed by counsel; but, as presented, they involve substantially one principal inquiry, and that is, whether the two deeds do or do not convey the same parcels of real estate? The ambiguity, if any, in the conveyance to Rosiers, (or appellant, as we shall hereafter style him,) exists on the face of the deed; and we shall, therefore, solve the difficulty, by giving a judicial construction to the language used in the instrument itself, discarding entirely all the extrinsic evidence of what the parties intended.

The land conveyed to appellant, as shown by the original deed, made an exhibit in the case, is described precisely as follows: "Section thirty-six (36), section thirty-five (35) east half, and southwest quarter and east half of northwest quarter of section nine (9), township seventy-seven, range eighteen west." The deed to Zeelt conveys several tracts, among others, the following: "The northeast quarter of section 9, and the northwest quarter of section 35, township 77, range 18 west." Appellant claims that by his deed, he obtained title to *all* of section thirty-five, and to 560 acres in section nine; or in other words, that the *east half*, following the figures (35), is not to be taken from said section thirty-five, but from section nine; and that, therefore, by this deed, there was conveyed to him the two entire sections (36 and 35), and the third (9), less eighty acres. And fol-

lowing this construction, the respondent Zeelt claims, that the land above stated, as contained in her deed, was previously conveyed to the appellant. The complainant, on the other hand, insists that by his deed, he conveyed to appellant all of section 36, the *east half of thirty-five*, and a quarter and an eighty in section nine. So it will be seen, that if appellant's construction is the true one, he has title to one section of land more than he would have, according to the construction contended for by complainant.

We think complainant's construction the only one that can be fairly or reasonably given to this instrument; and in giving our reasons for this conclusion, we premise, that it is one of those questions frequently met with, which, though plain from its simple statements, is for that reason, difficult to elucidate or make clearer, after the most elaborate discussion. We believe that the language used, if presented to any number of persons, would invariably receive the construction given to it by the court below. And yet, if asked why they give it such construction, their reasons would perhaps be no more satisfactory to the minds of others, than are the words themselves, as used in the deed. The uniform answer most probably would be, that such was the intention of the parties. Now, we know that it is a maxim of the highest antiquity, and universally recognized, that all deeds shall be construed as near the apparent intention of the parties as possible, consistent with the rules of law. See Broome's Maxims, 238; 4 Greenl. Cruise, 295. And yet the difficulty remains, to explain in the case before us, why the construction placed upon the language used, is the most consistent with the intention of the parties. We will, perhaps, make ourselves as well understood, by stating some considerations which lead us to conclude that the opposite construction, or that claimed by the appellant, is not the correct one. If all of section thirty-five was intended to be conveyed, then why was not the comma, or punctuation point, placed immediately after the figures 35, as was done after the figures 36? If the east half of section nine was conveyed, why the punctuation point after the words *east*

*half?* Why, if the additional section was in fact conveyed, as claimed, was the conveyancer so particular in placing points, denoting stops, at the close of the land described, as contained in *each section?* He describes the whole of section thirty-six, and then follows a point or punctuation; then section thirty-five, but no similar or other point, denoting a stop, until the words *east half* are added. Then follows, without further punctuation, a description of two parcels in section nine, and immediately thereafter, another comma. In being thus particular, he seems to have studied to keep the lands in the different sections, separate and distinct. But we inquire again, if the east half of section nine was conveyed, why the use of the conjunction, *and*, between the words *east half*, and *southwest?*

We are aware that the copulative *and*, is used to connect or conjoin two or more subjects, and means to add, or in addition to. And this view of it, would seem to sustain the position, that the southwest quarter, and east half of the northwest quarter, of section 9, were to be added to the east half of the same section. But it performs its office equally well, by saying that these parts of section 9, were designed to be added to the east half of section 35, and the whole of section 36, first named in the description; and especially does this latter thought have force, when we consider, that if appellant is correct, the usual manner of writing the description, would have been to omit the uniting word or copulative, until the last parcel of the section was to be described. The draughtsman in this instance, however, describes all of section 36, then section thirty-five (35) east half, and then, as if entirely through with those sections, he commences the description of the land contained in the only remaining section. Or, to make the argument derived from the use of the conjunction following the words *east half*, more clearly understood, we assume that the usual method of describing three or more parcels of land in the same section, is to employ the uniting term or word, immediately preceding the last parcel, and not to connect the second, or any other than the last description; and especially is this true, when the

Scholte v. Rosiers et al.

comma, or other punctuation point, is used after the description of the first, or any other than next to the last parcel. Thus, in the case before us, if the east half of section nine was to be conveyed, the usual method, or at least, one frequently adopted, would have been to write it thus: section thirty-six (36), section thirty-five (35), the east half, southwest quarter *and* east half of northwest quarter section 9. And while it is true, that this form or description is not so clear as it might be made, yet it will serve to illustrate the position, that the use of the copulative before the word *northwest*, tends to show that the draughtsman, and the parties, designed to there commence the description of the lands in section nine; and that, if it was intended to include the east half of the same section, no adding word would have been employed, until after the description of the second piece.

We do not say that violence is done to any rule of syntax, by the use of the word *and*, in the place named, if appellant's construction is correct; but only mean, that if such had been the intention of the parties, they would most likely have omitted the word, and thus followed the course usually adopted in making or setting out the description of different parcels of real estate.

In deriving aid in the construction of this instrument, from the manner of its punctuation, we have not overlooked the rule referred to by appellant, as found in *Ewing* v. *Burnett*, 11 Peters, 41; and which is, that punctuation is a most fallible standard by which to interpret writing; that it may be resorted to when all other means fail; but the court will first take the instrument by its four corners, in order to ascertain its true meaning; and that if that is apparent on judicially inspecting the whole, the punctuation will not be suffered to change it. This rule, we think, is not violated by resorting to the punctuation, as we have done in this instance. Was it apparent to our minds from this deed, that the additional section was in fact intended to be conveyed, as claimed by appellant, we should certainly not allow the manner of its punctuation, to change such meaning or inten-

tion. But we do not understand that this standard, while fallible, is to be entirely disregarded. .The object of these points, or punctuation marks, in either a law, or written instrument, is to denote the stops that ought to be made in reading, and also to point out *the sense;* and though they may be entirely omitted, courts in construing the law or writing, will read with such stops or pauses, as to give them meaning and effect, rather than in such a manner as to make them nugatory or unreasonable. Bouvier's Dict. Point, Punctuation, citing 4 T. R. 65. In this instance, we have done no more than to resort to such stops or points, made by the parties themselves, to assist in ascertaining the true sense or meaning of the instrument. And, in this connection, we make the further remark, that it may well be doubted, whether this rule should be applied with all its strictness, when construing a description of lands under our system of surveys. It has pertinency, and, in our opinion, was designed to apply more particularly to other parts of an instrument or writing ; those parts that state the terms of the contract ; the language of a court in giving instructions to a jury, as in the case cited from 11 Peters; the reading of a law or statute ; or something of a similar character. But in our state, where lands are surveyed and designated by well understood and specific numbers, and so mapped and divided into sections, half sections, quarter, half quarter, and quarter quarter sections, as to enable us to determine what parcels are meant, by the use of a few words or figures, there would seem to be a propriety in paying attention to the manner in which parties divide or separate several parcels, conveyed in the same deed, by the use of the usual grammatical points or marks. Not that the use of such points shall, by any means, be suffered to change what shall otherwise appear to be the meaning of this part of the instrument, but that, when used, they may be resorted to in aiding other means of construction, and not disregarded, until all others are exhausted or fail. Applying the rule as thus modified, and we think, properly, to the case before us,

and the correctness of the construction given is, we think, most apparent.

But appellant insists, that if it was designed to deed only the east half of section thirty-five, the parties would have stated the description thus: *east half of section thirty-five*, or preceded the section with the part to be conveyed. This would certainly have been more in accordance with the correct and appropriate use of language, and the practice in conveyancing; and, indeed, the fact that the words *east half* follow, instead of precede the number of the section, is to our minds the only reasonable ground upon which to base an argument in favor of the construction claimed by appellant. But to this it may be answered, that the entire description is to be taken together, and to be construed as a whole, and not in parts. And when thus viewed, we think the consideration heretofore presented in favor of complainant's construction, more than outweighs this apparently strong objection. But, as a further answer to this position, it must be remembered, in the language of the Lord Chief Justice, in *Parkhurst* v. *Smith*, Willis, 332, " that the construction of deeds, ought to be as near to the apparent intention of the parties as possibly may be, and as the law will permit; that too much regard is not to be had to the natural and proper signification of words and sentences, to prevent the simple intention of the parties from taking effect; for that the law is not nice in grants, and therefore it doth often transpose words contrary to their order, to bring them to the intent of the parties. For neither false Latin, nor false English, shall make a deed void, if the intent of the parties doth plainly appear." In this case, we think the words are, and will be, brought " to the intent of the parties," by so transposing them, as to make them precede the number of the section.

Another consideration that has weight with us, in meeting this objection, is this: in ascertaining the intent of the parties, the court will always consider the then particular situation—the circumstances attending the transaction—the state of the country—and the thing granted, at the time of

the grant. 1 Greenl. Ev. §§ 278, 286, 295 ; note to 4 Greenl. Cruise, 242. And we deem it proper that, in considering their particular situation, we should have regard also, to any want of knowledge on their part, with the frame and struc-ture of our language. In the case before us, it is evident from an inspection of the instrument, that it was drawn by the parties to it—probably by the complainant. Indeed, we understand it to be admitted and claimed by appellant, that it was drawn by complainant. Both of them are natives of Holland. With this fact before us, and the further one, that it is extremely difficult for persons of foreign birth, and un-accustomed to our language, to speak or write it properly, or with an approach to critical accuracy, we have a key to what might otherwise, under the construction given, seem an improper and unusual description.

Other positions have been urged by counsel, but as sug-gested in the commencement of this opinion, they are all subordinate to, or dependent upon, the construction to be given the language used in this deed. The conclusion from the instrument itself, that no part of the land conveyed to the respondent Zeelt, is included in the deed to her co-de-fendant, Rosiers, renders a reference to such other positions unnecessary.

Decree affirmed.