THE STATE OF IOWA v. ARCHIE WOOD, Appellant.

Homicide: CONTRIBUTORY CAUSES: *Death by Disease.* Whether one who injured another who died of empyema was guilty of homicide depends upon whether the injuries inflicted by him directly contributed to produce the empyema, and the fact that deceased would not have died therefrom if he had been properly cared for is immaterial.

INDICTMENT: *Construction.* The indictment sufficiently charged murder in the first degree, because the references to words essential to such charge, found in other parts of the indictment were so clear that a repetition of said words was needless.

DUPLICITY: *Punctuation.* An indictment for murder charged that defendants did "willfully, deliberately, premeditately and with malice aforethought and with the intent to kill and murder one A. C., feloniously strike, jump upon, stamp and kick the said A. C. upon his breast, side and shoulder; did thus strike the said C. with their fists and stamp, jump upon, and kick said A. C. with their feet, and did then and there in the manner aforesaid, inflict mortal wounds of which said wounds

| 112 | 411 |
| 114 | 496 |
| 112 | 411 |
| 129 | 263 |
| 129 | 708 |
| 112 | 411 |
| 143 | 230 |

so inflicted as aforesaid" by the said defendants the said A. C. then and there died. *Held*, that the punctuation did not make the indictment bad for duplicity, as, without the punctuation, its meaning was clear.

EVIDENCE: *Harmless error*. The statement of a witness in a prosecution for murder to the effect that he was requested by another to go to the barn where the deceased was injured to see what the trouble was, if improperly received, was without prejudice.

*Hypothetical questions*. No complaint can be made because of the omission of established facts in hypothetical questions propounded to physicians, by the state, if these were supplied on cross-examination.

DEGREES: *Jury question*. In a prosecution for murder no element in the acts necessary to constitute a degree of murder or of manslaughter was wanting in the evidence, but the state relied solely on circumstantial evidence, with the exception of the dying declarations of the deceased. Except that tending to show defendant's intoxication, none bore directly upon the motive for what was done. *Held*, that the particular degree of murder or of manslaughter was for the jury.

*Appeal from Harrison District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

WEDNESDAY, DECEMBER 19, 1900.

THE defendant appeals from a judgment convicting him of manslaughter.—*Affirmed.*

*M. B. Bailey* and *S. H. Cochran* for appellant.

*Milton Remley,* Attorney General, and *Chas. A. Van Vleck,* Assistant Attorney General, for the State.

LADD, J.—That Achille Chevalier received injuries March 11, 1899, which may have contributed to his death April 24th of the same year, was fully established. Did this defendant, with Mize and Mitchell, inflict them? The evidence was such as to fairly put this question in issue, and it was finally disposed of by the verdict returned. The indictment charged that these parties "did willfully, deliberately, premediately and with

malice aforethought and with the intent to kill and murder one Achille Chevalier, feloniously strike, jump upon, stamp and kick the said Achille Chevalier upon his breast, side and shoulder; did thus strike the said Chevalier with their fists and stamp, jump upon and kick said Achille Chevalier with their feet, and did then and there in the manner aforesaid, inflict mortal wounds of which said wounds so inflicted as aforesaid by the said Archibald Wood, Evan Mize and John Mitchell, the said Achille Chevalier then and there died." This is not bad for duplicity, as contended. But for the punctuation, no one could have thought of such a thing. While punctuation may sometimes shed light on the meaning of an instrument when somewhat ambiguous, it ought not to be permitted to destroy it. Where its meaning, without the punctuation, is clear, none will be made use of to confuse or defeat what was evidently intended. *Scholte v. Rosiers,* 4 Iowa, 335; *White v. Smith,* 33 Pa. St. 186; *Weatherly v. Mister,* 39 Md. 620; *Ewing v. Burnet,* 11 Pet. 41 (9 L. Ed. 624).

Equally without merit is the claim that murder in the first degree is not charged. By the use of the words "thus" and "then and there in the manner aforesaid" repetition was avoided, and the acts characterized as definitely as though "deliberately, premeditatedly, and with malice aforethought, and with intent to kill" had immediately preceded "inflict mortal wounds." In *People v. Davis,* 73 Cal. 355 (15 Pac. Rep. 8), an indictment was held sufficient without these connecting words, on the ground that the description of the assault applied as well to the infliction of the wounds. See, also, *St. Clair v. U. S.,* 154 U. S. 134 (14 Sup. Ct. Rep. 1002, 38 L. Ed. 936); *State v. Stanley,* 33 Iowa, 529. A person of ordinary understanding could experience no difficulty in knowing precisely what was intended, and this is all the law requires. Section 5289, Code.

II.    The deceased improved in health up to April 6th, when his physician temporarily left the state.  Another was called on the 11th, and soon thereafter empyema set in, resulting in his death on the 24th.    The defendant insists the evidence tended to show that, but for mismanagement on the part of this physician, or those caring for deceased, he might have recovered; and that the jury should have been instructed, if they so found, that the accused could not be convicted of manslaughter.    The rule is conceded to be, as stated by Greenleaf: "If death ensues from a wound given in malice, but not, in its nature, mortal, but which, being neglected or mismanaged, the party died, this will not excuse the prisoner who gave it." 3 Greenleaf Evidence, section 139.    The intent is here mentioned, as it is also in many of the cases, but not as a ground for rejecting such an excuse.    The true reason for not allowing the defense is that the wound inflicted, though it may not have been the only cause, yet contributed, mediately or immediately, to the death of the person assaulted.    To warrant escape from the responsibility for the killing, the subsequent mismanagement or neglect must have been the sole cause of death.    No principle is better settled than that he who, by his wrongful act, accelerates or hastens death, or contributes to its cause, is guilty of homicide; and whether this be murder or manslaughter necessarily depends on the intent or motive by which the person making it was actuated.    The court rightly instructed that, if the injuries inflicted by the defendant directly contributed to produce empyema causing death, he was guilty of taking the life of the deceased; if these did not so contribute, he could not be convicted of murder or manslaughter.  *Denman v. State,* 15 Neb. 138 (17 N. W. Rep. 347; *McAllister v. State,* 17 Ala. 439; *Com. v. Hackett,* 2 Allen, 140; *Smith v. State,* 50 Ark. 546 (8 S. W. Rep. 941); *Crum v. State,* 64 Miss. 1 (1 South Rep. 1; 1 McClain, Criminal Law, 292, and note, in which cases are collected.

III.   The state relied, with the exception of Chevalier's dying declarations, solely on circumstantial evidence. Except that tending to show the defendant's intoxication, none bore directly on the motive in what was done. Inasmuch as every one, in the absence of a contrary showing is presumed to intend the natural consequences flowing from his own acts, we think the guilt of the defendant of any particular degree of murder or of manslaughter is for the jury, and not the court, to determine. Possibly, where some of the essential elements of an act constituting the crime of a particular degree are not proven, a different rule might prevail. Thus, in *State v. Kyne,* 86 Iowa, 616, the defendant was indicted for rape, but the evidence tended only to show an assault with intent to commit rape, and it was held error to submit to the jury the issue as to his guilt of the higher offense. Here, however, no element in the acts necessary to constitute any degree of murder or manslaughter is wanting. As between these, it is purely a question of intention or motive impelling what was done; and, where the presumption referred to has not been entirely overcome by the evidence, this is always to be determined by the jury. See *State v. Jackson,* 103 Iowa, 710; *State v. Adams,* 78 Iowa, 294.

IV.   The statement of Brewer to the effect that Alta Mize requested him to go to the barn to see what the trouble was, even if admitted to have been improperly received, could have worked no prejudice.   The evidence, without conflict, showed deceased to have understood himself to be *in extremis* when the dying declarations proven were made.   If, as claimed, there were omissions of facts established in the hypothetical questions propounded to the physicians by the state, these were supplied on cross-examination.   The instructions as a whole were clear and accurate, and we discover no ground for interfering with the sentence the law has imposed.—AFFIRMED.