STATE OF IOWA v. GEORGE BAKER, Appellant.

**Murder:** SELF-DEFENSE: INSTRUCTIONS. Where instructions have been given directly covering in a general way the subject matter of a defense relied upon by one charged with crime, a reversal will not

be ordered because the court fails to cover every particular circumstance relied upon, when no request for instructions is made calling attention of the court to some particular phase of the evidence defendant may wish to have emphasized. As where defendant relied upon self-defense and it appeared that his peril and that of his brother was joint, and the court correctly instructed regarding the right of accused to defend against a threatened attack upon himself and brother, failure to specially instruct that defendant had the right to defend his brother from the attack was not erroneous, in the absence of request therefor.

**Murder in second degree:** SUBMISSION OF ISSUE. Where it is clear that defendant struck deceased with an instrument which, as used, constituted a deadly instrument and caused his death, the question of murder in the second degree must be submitted.

**Murder in first degree:** DELIBERATION : SUBMISSION OF ISSUES. The deliberation and premeditation essential to the crime of murder in the first degree need not exist for any specific length of time prior to the killing; and where it appears that defendant selected a deadly weapon, and with opportunity to deliberate used it in a deadly manner, the court should not take the question of deliberation from the jury, but should submit the question of murder in the first degree, although there was no specific proof of deliberation and premeditation, aside from the proof of a violent infliction of a mortal wound.

**Criminal law:** REMARKS OF COUNSEL: FAILURE OF DEFENDANT TO TESTIFY. A criminal cause will not be reversed because of the possibility that the jury might have deduced from the remarks of counsel, by way of remote inference, that some of the facts insisted upon as having been established might have been negatived by defendant had he gone upon the stand.

**Reasonable doubt:** INSTRUCTION. Where the question of reasonable doubt has been fully and properly presented to the jury, an instruction to the effect that if defendant inflicted the wound that contributed to or caused decedent's death the State was not required to show that neither defendant nor those attending him were negligent in the care of the wound, was not objectionable in failing to state that the jury must find from the testimony beyond a reasonable doubt that defendant inflicted the wound.

**Same.** The instruction "you may convict defendant of murder in the first degree, or of murder in the second degree, or of manslaughter, *as you may find from the evidence* beyond all reason-

able doubt he has been proven guilty," was not objectionable as indicating that the evidence established beyond reasonable doubt the guilt of defendant in one degree or the other of criminal homicide; especially as the jury was elsewhere told that they could only convict of either degree of homicide upon evidence establishing defendant's guilt, beyond a reasonable doubt, of the degree of which they should find him guilty.

*Appeal from Montgomery District Court.—*Hon. N. W. Macy, Judge.

WEDNESDAY, JUNE 30, 1909.

UNDER an indictment charging murder in the first degree, defendant was convicted of manslaughter, and sentenced to imprisonment in the penitentiary for eight years. From this conviction he appeals.—*Affirmed.*

*Ralph Pringle* and *J. M. Junkin,* for appellant.

*H. W. Byers,* Attorney General, and *Chas. W. Lyon,* Assistant Attorney General, for the State.

McCLAIN, J.—The circumstances of the killing of one Claude Grice by the defendant, with which he was charged in the indictment, so far as material to a consideration of the errors relied upon for reversal, were as follows: The deceased and his brother, Marion, were engaged in operating a bakery in Red Oak, occupying for that purpose the first floor and basement of a building which fronted to the east. The stairs to the basement were at the rear or west end of the building. On the day preceding the homicide the defendant and his younger brother Newton were with the deceased in the bakery, when something was said in relation to a small debt owed by Newton to the deceased, and Newton paid the deceased $1.75, which, as Newton testifies, was a little less than deceased claimed, but it is not contended that there was any

particular quarrel or ill feeling at this time as between the
deceased and Newton. On the following morning Newton
went to the bakery, and Marion, the brother of deceased,
gave him a receipt for $1.75 in full of all indebtedness. On
this visit deceased said something to Newton, who had pre-
viously worked with him in the bakery, in regard to
helping that day, in order that deceased might get through
his work sooner. Newton declined, on the ground that
he was sick. Later, and about noon, defendant and his
brother returned to the bakery, and went to the basement
to see the deceased, who was there at work, and deceased
treated defendant and his brother to whisky, drinking
some of it himself. Defendant and his brother were near
the east end of the basement, and deceased was between
them and the stairway. Deceased again asked Newton to
work for him, which Newton declined to do. Deceased
addressed an opprobrious epithet to Newton, and accused
him of not treating him right in refusing to help him,
and defendant replied that deceased should not talk to his
brother in that way, when deceased said, "I will get you,
you son of a bitch," and ran upstairs. In a few seconds
deceased returned down the stairs, saying "I will get you,
you sons of bitches." These are the facts preceding the
immediate circumstances of the homicide as testified to
by Newton. Defendant did not testify on the trial. New-
ton further testified, in substance, that as deceased came
towards them, the witness saw in the right hand of de-
ceased what looked to him like a gun; that witness and
the defendant were then right by some metal scale weights;
that each seized one of the weights, and stepped behind
the open door of what is called the "proof box," defendant
being behind Newton; that as deceased approached, New-
ton could see only the lower part of his body, and the de-
fendant was not in as good position to see deceased as
Newton was; that Newton said to defendant, "Look out,
George, he has got a gun;" that as deceased advanced, de-

fendant threw the metal scale weight at him, and deceased
fell forward, having received the injury which subsequent-
ly caused his death, and that defendant and Newton then
left the bakery without investigation as to the extent of
the injury inflicted upon deceased, and went to the mayor
of the city, reporting that defendant had knocked the de-
ceased down with a weight. The entire evidence negatives
the possession of a weapon by deceased.

I.   The court instructed the jury fully as to the law
of self-defense, and the only complaint in this respect is
of the failure to tell the jury specifically that defendant
1. MURDER: self-     had the right to defend his brother from
   defense: in-    an attack by the deceased. The jurors were
   structions.    instructed, however, with reference to the
right of defendant to make self-defense, as against a threat-
ened attack upon him and his brother, in the reasonable
belief that deceased was armed with a gun, and this we
think was as far as it was necessary to go under the
evidence.   The testimony of Newton, as already set out,
tended to show that the threat of deceased was toward
both of them, and that there was no more indication of
danger to Newton than to defendant. Newton does not
testify that he called upon defendant to protect him
against the threatened attack, but his warning to defend-
ant was to look out for the deceased, who had a gun.
While this court has not refused to consider errors alleged
in failing to instruct the jury as to any so-called defense
relied upon to negative the criminality of the act charged,
where no instructions have been asked on the subject
in behalf of defendant, yet where, as here, instructions
are given directly covering, in a general way, the subject-
matter of a defense, such as that of self-defense, relied
upon by defendant, we feel that we ought not to reverse
because the court does not cover every peculiar circum-
stance relied upon, where no instructions are asked for the
defendant calling the attention of the court to the peculiar

phase of the evidence which the defendant wishes to have emphasized. We are satisfied that the jury could not have been misled into thinking that the defendant would not have had a right to defend his brother under the circumstances, if his brother were in peril from the assault of deceased. The peril, if any, was a joint peril, and as to that the instructions were adequate.

II.   At the conclusion of the evidence there was a motion for defendant to withdraw from the consideration of the jury the charge of murder in the first or in the second degree, for the reason that there was not sufficient evidence to sustain a verdict for either degree of murder. Error is assigned in the overruling of the motion, and in submitting to the jury the question whether defendant was guilty of murder in the first degree. As it is practically conceded that defendant intentionally struck the deceased with an instrument which, as used, was a deadly instrument, and caused his death, there can be no doubt of the propriety of submitting to the jury the question as to murder in the second degree.

*2. Murder in second degree: submission of issue.*

But it is contended that as to the first degree there was error, because there was no showing of deliberation and premeditation such as would sustain a conviction for that degree of murder. It is well settled that premeditation and deliberation need not exist for any particular length of time before the killing to warrant a conviction for the first degree. *State v. Fuller,* 125 Iowa, 212; *State v. McPherson,* 114 Iowa, 492, and cases cited. This court has never held that the trial judge could be required by motion to enter into a critical examination of the evidence, where the proof tended to show homicide by violence, with malice aforethought, for the purpose of determining whether in his opinion the act was deliberate and premeditated. There might perhaps be cases where the circumstances

*3. Murder in first degree: deliberation: submission of issue.*

of the homicide were such as that the court could say, as a matter of law, that there ·was no evidence of deliberation and premeditation, but such cases would be exceptional. Where the defendant has selected a deadly weapon, and with opportunity to deliberate has intentionally used it in a deadly manner, it would not, we think, be proper for the court to take the question of deliberation and premeditation from the jury.    That under such circumstances it is proper to submit the question of first degree to the jury, although there is no specific proof of deliberation and premeditation, apart from the proof of the violent infliction of a mortal wound, has been affirmed by this court on several occasions.    See *State v. Jackson,* 103 Iowa, 702; *State v. Wood,* 112 Iowa, 411; *State v. Fuller, supra.*

    There is nothing in this case to take it out of the usual rule in this respect.    The jury in fact found the defendant guilty of felonious homicide without malice aforethought, but that does not, in itself, show that it was not properly left to the jury to determine under ·the evidence whether there was such intentional killing as to constitute the second degree of murder, or such deliberation and premeditation as to establish the first degree..    We have held it to be error to submit the question of murder in the first degree where the indictment does not properly charge murder in that degree, even though the jury may have found the defendant guilty of manslaughter only. *State v. Andrews,* 84 Iowa, 88; *State v. Boyle,* 28 Iowa, 522.; *State v. Knouse,* 29 Iowa, 118.    But· we think it would be introducing a wholly unnecessary complication into the trial of prosecutions for murder if we should hold that the trial judge must, at his peril, before submitting a charge of murder in the first degree to the jury, determine whether under the evidence a conviction of murder in that degree could be sustained, and this would certainly be true in a case where the fatal blow was intentionally

struck. We have no hesitation in reaching the conclusion that the court committed no error in submitting to the jury the question whether defendant was guilty of murder in the first degree as charged in the indictment.

III. Complaint is made of a portion of the argument of counsel for the prosecution to the jury, on the ground that the attention of the jury was thereby called to the fact that defendant was not a witness in his own behalf, in violation of the prohibition found in Code, section 5484. Without setting out the remarks of counsel complained of, it is sufficient to say that we find therein no allusion to the fact that defendant did not testify as a witness. The most that can be claimed for the remarks of counsel is that the jury might have deduced therefrom, by way of remote inference, the conclusion that some of the facts insisted upon by counsel as having been established by the evidence might have been negatived by the testimony of defendant if he had gone on the stand. But this court, while strictly applying the statute in every case, has not found it necessary to reverse because of the possibility of such remote inference. *State v. Kidd,* 89 Iowa, 54; *State v. Seely,* 92 Iowa, 488; *State v. Davis,* 110 Iowa, 746; *State v. Snider,* 119 Iowa, 15; *State v. Hasty,* 121 Iowa, 507. We are satisfied under these authorities that there was no ground of reversal in the remarks of counsel set out in this record.

*4. CRIMINAL LAW: remarks of counsel; failure of defendant to testify.*

IV. In one of·the instructions the jurors were told, in substance, that if they should find from the testimony that defendant did inflict a wound upon deceased which caused, or contributed to, his death, the state would not be required to show that neither the deceased, nor any one in attendance upon him, was guilty of negligence in the care and treatment of such wound. This instruction is complained. of on the ground that the court omitted to say that the

*5. REASONABLE DOUBT: instruction.*

jury must find from the testimony, beyond a reasonable doubt, that defendant inflicted the wound. This criticism is entirely without merit. The question of reasonable doubt was fully presented to the jury, and the instruction referred, not to the finding as to defendant's guilt in the infliction of the wound, but only to the question whether the wound was the proximate cause of the death resulting.

In another instruction this language was used: "As I have already told you, if the evidence justifies, you may convict the defendant of murder in the first degree, or of murder in the second degree, or of man-slaughter, as you may find from the evidence, beyond all reasonable doubt, he has been proven guilty of the one or the other of such offenses." The criticism of this language is that it tended to indicate to the jury that the evidence established, beyond a reasonable doubt, the guilt of defendant of some one of these three forms of criminal homicide. It is conceded that, if the court had substituted "if you find from the evidence," instead of "as you may find from the evidence," the instruction would have been free from error. We think it is plain that the jury could not have been misled in this respect, in view of the other portions of the charge, in which the jurors were plainly told that they could only convict of any form of criminal homicide on evidence establishing that particular form of which they should find the defendant guilty beyond a reasonable doubt. We would not be justified in resorting to a mere surmise of possible misunderstanding of a particular phrase, where the entire charge, read as a whole, is clear and unmistakable in its meaning.

6. SAME.

Finding no error in the record, the judgment is *affirmed.*