STATE OF IOWA, Appellee, v. DEWEY BERLOVICH, Appellant.

No. 43097.

DECEMBER 17, 1935.

REHEARING DENIED MARCH 13, 1936.

Jo R. Jaques, for appellant.

Edward L. O'Connor, Attorney General, Walter F. Maley, Assistant Attorney General, and Carl A. Burkman, County Attorney, and Albert H. Adams and Francis J. Kuble, Assistant County Attorneys, for appellee.

ALBERT, J.—Under the evidence in this case the jury could have found the following facts:

This crime was committed on the 10th day of March, 1935, at about 4 o'clock in the afternoon, in a place known as the Sportsmen's Club, on West Seventh street, in Des Moines. This building faces Seventh street and is entered from said street by a door on the west side thereof. A partition runs north and south, in the neighborhood of 24 feet east from the front door, thus dividing the building into two rooms, and in about the middle of said partition is a double swinging door for passage from one room to the other. In the front room, on the south side thereof, is a bar about 2 feet wide and 3½ feet high, paralleling the south side of the building and about 4 feet therefrom. This bar is unbroken and extends from the west end of the building to the partition. Entrance behind the same is made by passing into the second room and then turning to the right and entering behind the bar from that room. On the day in question the defendant and his helper were in the second room from the street, with some other parties, figuring income tax. Two men entered at this time and sat down. After the parties who were there in relation to the income tax passed out of the building, the deceased, Donald Merrigan, and his wife and small child entered said building, and deceased stated to the defendant that they wished a private conversation with him. Defendant requested the other men to leave, which they did, and the front door was locked (this being on Sunday and not a business day in this concern). They all passed into the second room and sat down at a table. Inquiry was then made of Berlovich as to the whereabouts of one Lillian Shope (Laughlin), a sister of Mrs.

Merrigan. Berlovich said he did not know where Lillian was, and the deceased said, "Well, we know that you know where she is, or where we can find her." Berlovich called the deceased a liar and then hit the deceased with his fist while the deceased was seated. This resulted in a fight between the two men, and after it was over the wife and child of deceased started to leave the building. Deceased followed them, and the defendant, Berlovich went behind the bar on the south side of the building, and, as the deceased was moving toward the front door of the building on the opposite side of the bar from Berlovich, Berlovich picked up a revolver that he had behind the bar and fired two shots at the deceased. One shot missed him; the other struck him on the left side in the neighborhood of the heart and passed through his body, and he died as a result thereof. At the time that these shots were fired the deceased was moving toward the front door of the building, and after he was struck by the bullet he passed out of the front door and fell on the sidewalk in front of the building. He was taken to the hospital, where he died.

■■■ The first complaint lodged against the action of the court is a claim of misconduct against the county attorney for insisting on a trial which occurred two weeks and one day after the commission of the crime. The usual complaint lodged against courts in criminal cases is the charge of too much delay in prosecution. We have carefully read this record and the defense made, and the testimony of all the witnesses. Defendant made a motion for a continuance on the day of the commencement of the trial, and it was overruled. This motion was based upon the same ground which is now charged to be misconduct of counsel in the prosecution of the case. We see nothing whatever in this charge of misconduct of counsel. Everything tends to show that the defendant had a fair and impartial trial, and there is no showing that he called for witnesses who were refused him, or that he could have gotten any other testimony than that which he introduced. The real contention of the defendant is that he should have had more time to prepare for trial. The practice in the district court is for the court to assign cases for trial, and not the prosecuting attorney, and why the prosecuting attorney should be charged with misconduct under these circumstances we are unable to see. However, as to the merits of the contention, we have settled this question in a case with parallel facts (State v. Brewer, 218 Iowa 1287, 254 N. W. 834), and have

held that the conduct of the court in setting the case down for trial eleven days after the crime was committed was not prejudicial error. Further than this, the question of the misconduct of the prosecuting attorney is a matter peculiarly within the discretion of the trial court, and unless there is a manifest abuse of this discretion the ruling of the trial court will not be disturbed. State v. Griffin, 218 Iowa 1301, 254 N. W. 841; State v. Williams, 195 Iowa 785, 192 N. W. 901; State v. Propp, 193 Iowa 383, 185 N. W. 90; State v. Brooks, 192 Iowa 1107, 186 N. W. 46; State v. Korth, 204 Iowa 1360, 217 N. W. 236; State v. Dobry, 217 Iowa 858, 250 N. W. 702; State v. Wheelock, 218 Iowa 178, 254 N. W. 313.

■■■ The county attorney, in his closing argument, said: "I have branded Dewey Berlovich Public Enemy No. 1," and "I was about to tell my reasons for the opinion." This remark was objected to by defendant's counsel and the court said: "Counsel in argument are permitted to comment upon the record in the case, and they may apply all reasonable and natural inferences which grow out of the record. The expression in itself might be fairly within the scope of a comment on an ordinary case, were it not for a peculiar connotation that the expression has obtained in recent years and connecting up with others. On that basis, perhaps the objection ought to be sustained, and that part of the argument referring to the defendant as Public Enemy No. 1 is stricken." We think there is no error in this ruling of the court. The argument of defendant's counsel is not made of record, and it might be, so far as we know, that the remarks made by the county attorney were proper responses to the remarks made by the defendant's counsel. However that may be, under the court's order, the remark was stricken from the record, and hence no error.

■■■ The next contention made is a double one, involving the insufficiency of the indictment and also the instructions of the court, in that it is not alleged in the indictment that the crime was committed with a "specific intent to kill." The indictment charges (and the instructions follow the indictment) that what was done was with "intent to kill," and the defendant's contention is that this is not sufficient, but that in both instances the term used should have been "specific intent to kill." With this contention we cannot agree. It is true that in many places in our decisions, and in the decisions of other states,

it is noted that one of the elements of the crime of murder in the first degree is specific intent to kill, but we have been unable to find any case in which an indictment or instruction has been held bad because of the omission of the word "specific." This question of intent is one of the necessary things to be considered in determining the mental attitude of the defendant. The word "specific" is generally used as an adjective. The real heart of the question is, What was the intent of the defendant? Did he have in his mind at the time an intention to kill the deceased? The word "specific" is used to distinguish this intention from any other intention that he may have had in his mind, and to require that the intention to kill was in actual existence in his mind. The term "specific" is used merely for the purpose of requiring the indictment to show that this particular intent to kill existed in his mind at the time of the commission of the offense. In other words, it does not make any difference how many intentions he had in his mind at the time of the killing, the only one for which he must respond is the intent to kill. It is in this sense, we think, that the books use the term "specific intent", and in the use of that term, when the indictment charges and the instructions require as a necessary element the "intent to kill", we think that that is all that is required, either in the indictment or the instructions. Were we to construe this as defendant contends, then, in every crime in which intent is involved, we would be required to hold an indictment or instruction bad which did not use the term "specific". For instance, in larceny the intent is to steal; in burglary the intent is to commit a felony. There has rarely been an indictment filed in the history of this state which would not be bad under the rule for which defendant contends. We are of the opinion that the use of the word "specific", either in the indictment or in the instructions, is not necessary to their validity.

There are a number of errors assigned on the admission or rejection of testimony. We have given careful attention to them, and find that in no instance was there reversible error.

When the state rested, the defendant made a motion to withdraw from the instructions to the jury the charge of murder in the first degree, on the ground that there was no evidence of specific intent to kill. A study of the evidence in the case shows that the ruling of the court in refusing to withdraw that charge was rightly made.

■■■ Complaint is made against instruction No. 4, and, as correlated therewith, instruction No. 8. Instruction No. 4 consists in general of the exact terms of the statute (sections 12911, 12912, 12919) in the definition of these three crimes. Instruction No. 8 is related thereto, and sets out the exact and necessary elements defined in the Code for murder in the first degree, and, in substance, tells the jury that before the defendant can be found guilty of murder in the first degree it must be shown beyond a reasonable doubt that the defendant at the time and place specified did "with malice aforethought and with deliberation and premeditation, wilfully, unlawfully, feloniously and with intent to kill, shoot the said Donald Merrigan, as charged in the indictment, and that as a result thereof said Donald Merrigan died. If you so find, then it will be your duty to find the defendant guilty of murder in the first degree." The principal contention is against instruction No. 8 for the omission of the word "specific" before "intent to kill". We have disposed of this question. We are satisfied that the matters set out in instruction No. 4, as applied to the case at bar in instruction No. 8, correctly state the law. These two instructions being correlated, they must be read and construed together.

Instruction No. 11, dealing with the question of plea of self-defense, is also objected to. While it is very doubtful whether or not, under the record made in this case, an instruction on self-defense should have been given, assuming that it was a proper case in which the instruction should have been given, we can see no just criticism of the contents of this instruction. It is extremely lengthy, but that is no reason for its being held erroneous. The defendant asked an instruction on this same subject, which was refused; but the court properly covered the law of self-defense in the instruction given, and hence there was no error in refusing the instruction requested by the defendant on the same subject.

Error is also assigned on the refusal of the court to give instruction No. 2 requested by the defendant. The substance of this instruction was covered substantially in the instructions given by the court.

■■■ Complaint is also made against instruction No. 5. This instruction is devoted to the definition of a number of legal terms involved, and, among others, is the following:

"Implied malice is that which is inferred from the acts and conduct of the accused and the means employed by him in doing an unlawful and injurious act without just cause or excuse. Where one assaults another with a dangerous and deadly weapon in such manner as will be likely to kill, it will be *assumed* in the absence of evidence to the contrary, that the assault was made with malice."

The particular complaint lodged against this instruction is the use of the word "assumed". In discussing this matter, defendant's counsel in his argument says: "Now, it may be *presumed*, but it is not necessarily assumed, and it is a question of fact for the jury instead of a question of law for the court." The words "assume" and "presume" seem to be generally considered synonymous. See 5 C. J. p. 1375; 49 C. J. p. 1340. Defendant's counsel suggests that the matter is controlled by our opinion in the case of State v. Hubbard, 218 Iowa 239, 250 N. W. 891, 253 N. W. 834. The cases are not parallel in any respect. We have repeatedly held in this state that the use of a deadly weapon in a deadly manner generates a presumption of malice, and if death results, justifies an inference of intent to kill. Klinkel v. Saddler, 211 Iowa 368, 233 N. W. 538. In the case of State v. Woodmansee, 212 Iowa 596, loc. cit. 619, 233 N. W. 725, 736, with reference to a similar question, an instruction was given:

"Where one person assaults another with a dangerous and deadly weapon in such a manner as is likely to kill, it will be presumed, in the absence of evidence to the contrary, that the assault is made with malice."

We there approved this instruction because of the qualification "in the absence of evidence to the contrary." This qualification is found in the instruction given by the district court in the instant case, and as the word used in the Woodmansee case was "presumed", we think there can be no difference in the force and effect of the use of this word "presumed" in the Woodmansee case and the use of the word "assumed" in the instant case. If, as we have held, the court has a right to instruct the jury that the presumption of malice is raised by the use of a deadly weapon in a deadly manner, and there is no evidence to the contrary, we can see no infringement on this rule by an in-

struction which uses the word "assume" in place of "presume". The thought carried to the minds of the average jury would be identically the same. We therefore cannot find that the court erred in this respect.

Complaint is made of some other minor matters in the trial, but nothing of serious importance arises under these complaints, —at least nothing that would give rise to reversible error. Viewing the case as a whole, we find that the defendant has had a fair and impartial trial, and that no reversible error occurred therein.—Affirmed.

KINTZINGER, C. J., and MITCHELL, ANDERSON, DONEGAN, and HAMILTON, JJ., concur.

PARSONS, J., takes no part.