STATE OF IOWA, Appellee, v. IVAN LEON SULLIVAN, Appellant.

No. 45465.

818

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

JUNE 17, 1941.

REHEARING DENIED SEPTEMBER 26, 1941.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■

John M. Rankin, Attorney General, Jens Grothe, Assistant Attorney General, and Robert N. Johnson, Jr., County Attorney, for appellee.

Phil F. Roan, for appellant.

MILLER, J.—The defendant was charged by county attorney's information with the crime of murder, as defined by section 12910 of the Code, 1939. He entered a plea of guilty. The court heard testimony for the purpose of determining the degree of the offense, found the defendant guilty of murder in the first degree and sentenced him to death by hanging. From such sentence and judgment, the defendant appeals.

Appellant asserts that, although there was a plea of guilty to murder, no substantial evidence or testimony was offered at the hearing to show that he was guilty of first degree murder and that the testimony could not justify any greater punishment than life imprisonment. The court determined that the murder was in the first degree, was cowardly and dastardly, that, though careful search had been made for some mitigating circumstances because of reluctance to impose the death penalty, none were found and judgment was entered accordingly. We have carefully examined the record and find nothing which would warrant or require a reversal of such judgment.

The record discloses that appellant was convicted in Emmet County District Court and entered the penitentiary at Fort

Madison in 1935. On June 22, 1940, he and two other inmates escaped by cutting their way through an electrified metal fence. They stole a car, drove to Chariton, where they left that car and stole another. They went to Derby, Iowa, broke into a store, got some clothes, drove to Missouri, broke into a barber shop and stole a shotgun, robbed an oil station at Fair Grove, Missouri, stole another car and headed north, robbed oil stations at Gallatin, Missouri, and Ames, Iowa, went to Omaha and bought some clothes, went to Cheyenne, Wyoming, where they bought two .38 revolvers and two .25 automatic pistols, drove to Chappell, Nebraska, where they broke into a hardware store and stole some more guns, including a Model 120 Remington repeating rifle, a Remington bolt-action .22 rifle, a Western Field 20-gauge shotgun, a 10-gauge Ithica shotgun, a 410-gauge bolt-action shotgun, a Stevens Browning 20-gauge shotgun and a Remington 12-gauge pump shotgun. At Chappell, Nebraska, they held up a filling station, went to Wilber, Nebraska, where they robbed a bank, then went to Kansas City, Missouri, where one of them, Estes, left the party.

On June 30, 1940, appellant Sullivan and his co-defendant Haenze bought a Dodge sedan and secured a driver's license, issued to Sullivan under the name of Nelson Cody. They then went to Kentucky where details were worked out to complete a preconceived plan to release another inmate at Fort Madison, one Cunningham. On July 7, 1940, they contacted one Marie Embree at Hannibal, Missouri, and arranged with her to deliver a message to Walter Pines, an inmate at Fort Madison and a friend of Cunningham.

Sullivan, Haenze and Marie Embree went to Burlington, Iowa, and on July 8 went to Fort Madison where Marie Embree secured admission to the penitentiary, delivered the message to Pines, and was paid $50 for her services. On the afternoon of that day the attempt to deliver Cunningham was made. Sullivan, from a bank or bluff overlooking the penitentiary yard, opened fire with a .22 pump rifle. Haenze approached a gate of the penitentiary yard to cut the padlock. He was unsuccessful. He went to the fence and threw a sawed-off shotgun to Cunningham. Considerable gunfire occurred during which one of the guards, Robert Hart, was fatally wounded and Cunning-

ham shot himself. Shortly thereafter, Haenze was captured at Marysville, Missouri, and Sullivan was captured at St. Joseph, Missouri.

The foregoing facts are not disputed by appellant. According to the testimony, he admitted practically all of them. Appellant, as a witness in his own behalf, admitted many of them on the witness stand. There is no question but that the plan to deliver Cunningham was carefully worked out and, in the attempt to execute such plan, Sullivan opened fire on Hart with a .22 rifle. He had planned to use a shotgun but abandoned that plan because the range at which he fired was too great to use a shotgun. Sullivan insisted that he did not intend to kill Hart, he only intended to wound him or make him lie down so that Haenze could open the gate. However, we must bear in mind that, when as here one deliberately and wantonly opens fire upon another human being with a deadly weapon and with intent to wound that person, the law holds him to the consequences of such act. If the victim is fatally wounded, the law presumes malice and the intent to kill. Under such a state of facts, a conviction of murder in the first degree is warranted. Section 12911, Code, 1939; State v. Mercer, 223 Iowa 1134, 274 N. W. 888; State v. Heinz, 223 Iowa 1241, 1258, 275 N. W. 10, 114 A. L. R. 959; State v. Berlovich, 220 Iowa 1288, 1292, 263 N. W. 853; State v. Matheson, 220 Iowa 132, 137, 261 N. W. 787; State v. Pinkerton, 201 Iowa 940, 946, 208 N. W. 351; State v. Burris, 198 Iowa 1156, 198 N. W. 82.

Robert Hart was shot in the neck, resulting in fractures of the fourth and fifth cervical vertebrae, severance of the spinal cord, paralysis from the neck down. From such injury he died the following morning. The attending physician testified that the wound was inflicted by a .22 caliber bullet; he did not see the bullet but was able to estimate it from the X-rays. Appellant now contends that the evidence is insufficient to warrant a finding that he inflicted the fatal injury. We find no merit in this contention. Appellant admitted that he shot at Hart with a .22 rifle. Hart was wounded while appellant was thus shooting at him. The doctor's testimony was competent. The evidence is sufficient to sustain a finding that Sullivan shot Hart.

Appellant contends that, since Hart's dying declaration as-

serts that he was facing south when the shooting started and facing east when he was hit, the physical facts show that someone else shot Hart. The record does not bear out the contention. The bullet entered the right side of Hart's neck. Sullivan fired at him from the north, and Hart looked to the north and west before he was hit. Sullivan is the only one, shown by the record, to have used .22 caliber bullets.

Appellant complains of the admission, without objection, of a statement prepared by Warden Haynes. Some of the statements therein contained might have been excluded had objection been made thereto. The absence of any objections to the testimony is perhaps explained by the court's opening statement, to wit: "I might say that in the introduction of this evidence, we are not going according to the rules of evidence, because I will not consider any incompetent evidence anyway."

In the absence of any showing otherwise, we must assume that the court did not consider any incompetent evidence. The competent evidence in the record is ample to sustain the findings of the court.

Appellant contends that, in imposing the death penalty, the court exercised a personal discretion rather than a legal discretion. We find no merit in such contention. The evidence warranted a finding that appellant shot Hart deliberately in cold blood. It was for the court to determine the penalty. There is no justification for us to interfere therewith.

The judgment is affirmed.—Affirmed.

CHIEF JUSTICE and all JUSTICES concur.