STATE OF IOWA, appellee, v. CODE L. HAMMER, appellant.

No. 48419.

(Reported in 66 N.W.2d 490)

OCTOBER 19, 1954.

REHEARING DENIED DECEMBER 17, 1954.

Jones, Cambridge & Carl, of Atlantic, for appellant.

Leo A. Hoegh, Attorney General, of Iowa, Raphael R. R. Dvorak, Assistant Attorney General, of Des Moines, and Lester L. Kluever, Cass County Attorney, of Atlantic, for appellee.

SMITH, J.—Defendant was convicted under an indictment that charged the crime of operating a motor vehicle upon a public highway while intoxicated, "it being the second offense * * *." The alleged situs was Atlantic, Cass County, Iowa. The indictment was filed October 6, 1952, and did not allege the date of the charged offense. The evidence however fixed the time as the evening or near midnight of July 24, 1952. The alleged date of the first offense was "during or about the year 1946." The offered proof showed conviction in that case was October 18, 1946, upon a plea of guilty as charged. The information in the earlier case charged the offense as committed on or about October 4, 1946, also in Atlantic.

The testimony in the instant case as to defendant's condition the evening of July 24, 1952, was conflicting, and various motions were made by defendant at the close of the State's evidence in chief and again when rebuttal evidence closed. The case was once reopened (over defendant's objection) to permit further evidence as to the alleged first conviction. Further details will be developed as we discuss the assigned errors. The jury found defendant guilty, motions to withdraw issue and for directed verdict were overruled and judgment pronounced. Defendant has appealed.

I. Six errors are assigned by defendant. Five concern procedure and proof relating to the question of the alleged former conviction. The remaining one urges the evidence was insufficient to prove beyond a reasonable doubt that defendant was guilty of the principal offense charged.

This last assignment is based on denial of defendant's motion for directed verdict. Defendant argues, principally on the authority of State v. Hamer, 223 Iowa 1129, 274 N.W. 885, and State v. McKenzie, 204 Iowa 833, 216 N.W. 29, that conviction

based "solely on the self-contradictory statements of the State's witnesses cannot stand."

An examination of these cases reveals that the decisions are mere expressions of the familiar doctrine, enunciated in State v. Wise, 83 Iowa 596, 599, 50 N.W. 59; and in State v. Reinheimer, 109 Iowa 624, 627, 80 N.W. 669, 670, that the rule with reference to granting new trials in criminal cases for want of evidence is different from that applied in civil cases: " 'We will not, in a criminal case, support a verdict, if it be against the clear weight of the evidence.' "

 We have examined these and other cited cases but find no support for the argument that mere contradictions in the testimony of the State's witnesses require it to be disregarded in determining as to the sufficiency of the evidence to go to the jury.

We do not believe the testimony of the law-enforcement officials was so destroyed here by any such contradictions. We cannot say the verdict was against the clear weight of the evidence.

It is difficult to argue by resort to precedents the comparative weight of conflicting evidence and to determine when it "clearly" preponderates in favor of defendant. Facts vary and can seldom be measured by precedent. We must be careful not to usurp or invade the province of the jury.

 As much as possible we must generalize the principles of applicable law. We have often said, for instance, that even in criminal cases we must view the record in the light most favorable to the State. See State v. Rutledge, 243 Iowa 179, 184, 47 N.W.2d 251; State v. Williams, 245 Iowa 401, 403, 62 N.W.2d 241.

 A statement of an analogous rule, if not indeed basically the same rule, is found in State v. Anderson, 239 Iowa 1118, 1125, 33 N.W.2d 1, 6: "* * * the case should be submitted to the jury if there is substantial evidence tending to support or reasonably tending to support the charge [citing cases]." And in determining the sufficiency of the evidence it is proper to consider only the State's evidence. State v. Williams, supra. For a good discussion of both aspects of the rule, see State v. Manly, 211

Iowa 1043, 1046, 233 N.W. 110. See also State v. Harrington, 220 Iowa 1116, 1123, 264 N.W. 24.

It is only when the State's witnesses so contradict themselves as to destroy entirely the probative effect of their testimony we can say a question of law is generated. Skillful cross-examination frequently weakens the effectiveness to the jury, but seldom destroys a witness's direct testimony.

We cannot say here there was no factual foundation for the verdict. The sheriff saw defendant immediately after the arrest, talked to him, smelled his breath, says he wobbled a little when he walked, and concludes: "I think I could tell by looking at a man, watching his actions, his movements, looking at his eyes and hearing him talk, watching him walk, whether he is intoxicated, and in my opinion Code Hammer was intoxicated." He had known defendant thirty years. He testified the doctor said "he couldn't afford to get into any more trouble."

The defendant had just been brought in by the arresting officers who had trailed him as he drove his automobile ten or twelve blocks on the streets of Atlantic. Nine and a half blocks of the distance was on Highway 6.

One says: "I observed the driving of that car in a weaving manner, zigzagging the highway. He was across the center line, back and forth the street, several times * * *."

Another testifies: "I observed that he was doing a lot of weaving back and forth most of the way, maybe two or three feet across the middle, maybe more. * * * I suppose he went a block or a little more than that after I tried to stop him. We got alongside of him and crowded him over and Dr. Code Hammer was the driver of the car. I have known him for fifteen years." The testimony of a third officer who had known defendant for ten years was similar.

The cross-examination of those witnesses was calculated to minimize their testimony in some respects in the minds of the jury members but we cannot say it was so weakened as to require or justify a directed verdict.

The doctor's own testimony is not too convincing as to his complete sobriety: "I left [home] in the neighborhood of seven o'clock; I went to the office, I had some laboratory work * * *. I spent an hour and three quarters to two hours there * * *. I

had two drinks of liquor at the office * * *. I went * * * to the Menuette to have a cup of coffee around nine o'clock * * *. I was looking for Olef Johnson who runs the Harlan Flying Service * * *."

He says he went to the ball game about 9:15. After the game "I went to a vacant apartment I had and was checking the water softener and charging [it]. * * * I started the water softener to put brine in the tank and salt which you run through by working valves * * *." That took "an hour or an hour and a half." He says he still wanted to see Mr. Johnson: "I wanted to talk with him in connection with some matters of the flying club."

He details at length his further search for Johnson ("as I had been told he was in town")—to the Menuette, out to the truck shop, looked in at the White Rose, back to the Menuette (for a cup of coffee) and finally back to the office "to turn on the air conditioner"—truly a busy evening for a busy dentist. One witness saw him at the Menuette "about five minutes to twelve." He testified: "Why, he was sitting at the counter trying to drink coffee and he spilled it all over the counter."

Defendant made no explanation of the bottle of "liquid" in his car with a Schenley's label—"a pint bottle and an Iowa seal, with approximately an inch and a half left in the bottle." Witnesses testified it smelled like whiskey.

After being taken to the sheriff's office the defendant declined to permit the doctor (who arrived about 12:30) to examine him. The sheriff testified "Doctor Long said, 'I am here to give you an examination' and Code said, 'well I'm not going through that any more.'"

We have discussed mostly testimony for the State as it is not our province to determine questions of fact further than necessary to make certain a jury question was presented. There was ample for that purpose.

II. Defendant strenuously insists there was no competent evidence of the alleged former conviction and claims incompetent evidence on that question was erroneously admitted.

When the State first closed its case defendant moved to withdraw the issue, arguing the only evidence of the former conviction was the court calendar of October 18, 1946 (Exhibit 3).

It showed the action as "O.M.V.I." but did not otherwise specify the nature of the charge. The entry, signed by the then presiding judge, contained the usual statements as to arraignment, plea, waiver of time, etc., and pronouncement of sentence.

It contained vertical columns headed, respectively, "Month", "day", "year", "Rec." and "Page." At the bottom of the "Rec." column appeared the figure "12", and of the column headed "Page" the number "401."

The clerk first testified he had "the complete District Court Record No. 12" in his custody and that the record of State of Iowa v. C. L. Hammer, No. 2612, appeared on page 401. When it was produced, identified and offered, the following colloquy took place:

Defendant's counsel: "That is the original judgment entry?" Witness: "It's the official of the District Court Record." Defendant's counsel: "But it's not the official judgment entry signed by the court?" Witness: "It is not the original entry by the court." Counsel: "I object to that as it is not the proper record, not the best evidence."

It is not clear at this point whether counsel was objecting because the judge had not signed the court record as provided by section 604.38, Iowa Code, 1950, or because it was not in fact, as he said, "the proper record."

If the objection was the former, it was not good. We have consistently held the provision of that statute (requiring the judge to sign the record) directory. State v. Hiatt, 231 Iowa 643, 647, 1 N.W.2d 736; In re Estate of Shivvers, 240 Iowa 93, 104, 34 N.W.2d 632; State v. Gardner, 245 Iowa 249, 262, 61 N.W.2d 458, 466.

The trial court ruled: "It is not the best evidence. I will sustain that. Not the best evidence." The witness was then asked: "Q. Do you have the original judgment entry of the court, signed by a judge, in your possession, custody and control?" Answering in the affirmative he produced Exhibit 3 already referred to, and described as the Judge's Calendar. The county attorney offered it as "the original judgment entry in Case No. 2612", and the witness identified it as the "judgment entry * * * as made by the court"; and identified the defendant

in the instant trial as "one and the same person as" the defendant in "Case number 2612, Exhibit Three."

The abstract on appeal prepared by defendant, as amended by the State, shows no objection urged to the offer of Exhibit 3 at the time it was offered. The objection made and sustained referred to the District Court Record, the introduction of which, under our decisions cited on appeal by defendant, would have been the proper document by which to prove the judgment. State v. Barlow, 242 Iowa .714, 718, 46 N.W.2d 725; State v. Wieland, 217 Iowa 887, 895–897, 251 N.W. 757.

Motion was made at the close of the State's evidence in chief to withdraw the "charge of second offense" and a similar one at the close of all the evidence. The latter motion expressly alleged the court calendar (Exhibit 3) was insufficient because "the only record upon which the proof can be made is the record book kept by the clerk of the court as required by statute." That record had already been rejected upon defendant's objection.

III. Notwithstanding the confusion in the record as it reaches us, we shall assume, as did counsel for the State in brief and argument, that objection to the evidence was in fact urged. Counsel for the State makes the ready answer that the evidence which defendant now argues was the "only competent evidence" was rejected by the trial court upon defendant's own objection that it was not the best evidence.

That answer is adequate. Manifestly defendant cannot blow hot and cold. We must hold he cannot assert here an error into which he himself led the trial court.

The broad rule as stated in 24 C. J. S., Criminal Law, section 1843, is as follows: "A party will not be permitted to complain of error with respect to the admission or exclusion of evidence where his contention on appeal is inconsistent with that taken below or where he himself has acquiesced in, committed, or invited the error."

Our own decisions have applied it as to various situations, none more clearly calling for its application than does the present case. The latest pertinent Iowa decision seems to be State v. Beckwith, 243 Iowa 841, 843–845, 53 N.W.2d 867. When the jury was about to be sworn in that case, one juror, out of a clear sky, refused to take the oath. (See Watson v. Charlton, 243 Iowa

80, 50 N.W.2d 605.) After much discussion and deliberation the offending juror was adjudged guilty of contempt and the case proceeded with eleven jurors. It was urged on appeal that defendant was prejudiced by the incident. We said at page 845 of 243 Iowa, page 869 of 53 N.W.2d: "The most the trial court could have done * * * was to declare a mistrial and start anew. This the court offered to do if counsel felt prejudice, such as to prevent a fair trial, existed. Both the defendant personally and his counsel specifically objected * * * and asked that the trial proceed. Defendant cannot now predicate error upon the court's doing the very thing they requested the court to do."

In another case in which the defense was "insanity" the trial court, about to overrule a motion to strike the answer of a defense witness, remarked: " 'I think it is proper for the purpose of showing her [defendant's] mental condition.' " Counsel corrected: " 'Not mental condition—just her mental attitude.' " Thereupon the court *sustained* the objection. We said: "Appellant cannot now complain of the court's ruling, because she invited it." State v. Buck, 205 Iowa 1028, 1032, 1033, 219 N.W. 17, 18.

Other cases are cited in support of the rule that defendant cannot take advantage of an error for which he was responsible. In State v. Leitzke, 206 Iowa 365, 370, 218 N.W. 936, 938, we said: "Not because of any efforts of the State, but rather, due to appellant's own inquiry through cross-examination, that feature of the record was revealed to the jury. *About this he has no right to complain.*" (Emphasis supplied.) See State v. Mutch, 218 Iowa 1176, 1181, 255 N.W. 643, 645, in which we said: "Thus it will be seen that the alleged misconduct of the jury, if any, of which complaint is made, was in fact induced and consented to by the appellant himself."

██ The present case affords a perfect demonstration of the soundness of the rule and we think defendant is estopped to complain of any error in the use of Exhibits 3 and 4 in lieu of the District Court Record or "Record Book" contemplated by section 606.7(1), Iowa Code, 1954.

It may be proper to suggest that Exhibit 3 fairly reveals its contents had been in fact recorded in Record 12, page 401; and it revealed the charge was "O.M.V.I.", the meaning of which de-

scription is well embedded in our current language and well understood among lawyers. We cannot assume defendant was prejudiced by its use.

■■ IV. We have already stated the court permitted the State to reopen its case after both parties had rested. At that time Exhibit 4 was introduced, it being the information in the earlier case. It revealed the offense charged was operating a motor vehicle while intoxicated—referred to only as O.M.V.I. in Exhibit 3.

There was no error in this procedure. "A judgment which fails to state the offense of which the defendant was adjudged guilty may be made definite in that respect by the introduction of other parts of the record which designate the crime of which he was charged and to which he pleaded, or was found, guilty." State v. Gardner, 245 Iowa 249, 258, 61 N.W.2d 458, 463.

Nor did the court abuse its discretion in reopening the case. As said in State v. Johnson, 89 Iowa 1, 3, 56 N.W. 404, 405: "It was proper for the State to recall a witness to testify to facts which had been overlooked on his first examination, and that appears to be what was done in this case."

We think there was no abuse of discretion and no error of which defendant may complain in receiving Exhibit 4 in evidence.

V. Defendant here was accorded every protection to which he was entitled. The court "leaned backward" to that end. The entire testimony of some witnesses as to defendant's condition around midnight of July 24, 1952, was stricken when a considerable portion might properly have remained. Defendant's counsel ably protected his rights and left no stone unturned in his defense.

It is not for us to determine his guilt or innocence. If we have seemed to be partisan in discussing the evidence bearing upon its sufficiency to carry the case to the jury it is proper to repeat our duty requires us to view the evidence in the light most favorable to the State. The jury, on the other hand, must, as instructed, give the defendant the benefit of every reasonable doubt.

We find no reversible error. The judgment must be affirmed. —Affirmed.

All JUSTICES concur.