STATE OF IOWA, appellee, v. FRANK A. HAFFA, appellant.

No. 48479.

(Reported in 71 N.W.2d 35)

1276

June 7, 1955.

Rehearing Denied July 27, 1955.

Ralph W. Travis and Beecher & Beecher, all of Waterloo, for appellant.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, K. L. Kober, County At-

torney, and Wendell Holmes, Assistant County Attorney, for appellee.

LARSON, J.—On July 9, 1953, the defendant, Frank A. Haffa, was indicted by the Grand Jury of Black Hawk County and accused therein of the crime of murder in the first degree. A plea of not guilty was entered on July 15, 1953, and on trial to a jury commenced September 28, 1953, defendant was found guilty of the included offense of manslaughter, and judgment entered accordingly. Defendant's motion for a new trial was overruled on November 25, 1953, and he was sentenced to imprisonment in the Iowa State Penitentiary at Fort Madison, Iowa, for not to exceed eight years, and to pay a fine of $1000. From this judgment and sentence he appeals.

Arvey C. Leeper, a resident painter and former yardman employee of the defendant, died between 12:30 and 1 a.m. on June 7, 1953, from the effects of a bullet wound received about 9:30 p.m. Saturday, June 6, 1953, at the property located at 41 South Hackett Road in Waterloo, Iowa, in which Mrs. Haffa resided and which was owned by the defendant.

The defendant, at the time of the acts charged, was 72 years of age, a retired dentist, with his living quarters in the Walnut Court Apartments, a building housing one hundred seventeen families, of which he was the acting manager. He also operated the Black Hawk Investment Company, owned considerable property, and acted as a receiver for bankrupt ladieswear stores.

On June 6, 1953, defendant testified he received a telephone call from his wife at 41 South Hackett Road telling him she had received a call that "she didn't like", and, as he had intended to take the clean laundry out there anyway, he immediately drove to the house, a trip which took about fifteen minutes.

During the past year there had been some vandalism at 41 South Hackett Road which had been reported to the sheriff's office, and defendant had been instructed, when he received information on trespassers upon the property, to get out there as quickly as he could and find out who such persons were. Mrs. Haffa had been loaned a gun for her protection at one time by

the deputy sheriff. This premise was a five-acre tract, completely fenced, with a steel gate on Hackett Road. There were several buildings on the grounds, including the house some 150 feet from the road and the garage some 200 feet from the gate. There were many trees and bushes on the grounds, two yard lights, and an eight-foot cement drive from the gate to the garage. The drive widened out to 16 feet south of the south door of the residence to provide double parking. There was a large elm tree across the drive southeast of the south doorway.

When defendant arrived at these premises about 8:30 p.m. the gate was open and all yard lights were off. Only a low voltage bulb over the kitchen sink was lighted in the house. He testified he drove into the garage, took the laundry into the house and visited with his wife for about thirty minutes. Then he told her to lock all doors and went out the east or back door to inspect the premises. He took a six-shot 38-caliber Colt police positive revolver loaded with steel-jacketed bullets from his car and went "to look around." He did not take a flashlight. It was about 9:30 p.m. when he saw a taxi stop in the driveway across the street and then turn around and go back the way it came. This taxi brought the decedent who had been drinking, but was not drunk. Defendant said shortly thereafter a man appeared at the back or east door, knocked and demanded admittance. When there was no answer from within, he kicked on the door and threatened to break in for some five minutes, and then walked on the drive south of the house to the south entrance, where he again tried to gain admittance. This doorway or porch entrance is approximately five by five and seven feet high. The sides are of cement blocks, and four cement steps lead up to it, with wrought-iron railings about three feet high on both sides of the steps. It was a very dark night. The defendant said from his hiding place behind the large elm tree he saw a human form go up into that porch entrance and heard him kick and pound on the door and demand entry to the house. After waiting four or five minutes defendant stepped from behind the tree and said he called out "This has gone on long enough. * * * come down out of there." Almost immediately he fired two shots into

the porch entrance. Their course through the door and interior of the house was traced by the officers, and the bullets recovered. The officers testified one bullet went through the door 10¾ inches to the left of the center as you face it, and 2 feet 6½ inches from the bottom. The other went through the door 7¾ inches to the right of the center and 4 feet 6½ inches from the bottom of the door. The defendant claimed he fired a warning shot into the ground just before firing into the entrance, but that bullet was never found. None of these bullets hit the decedent, but he made haste out of the dark entrance and down the steps toward the defendant who had moved up almost across the cement drive. The fatal shot was fired after decedent reached the sidewalk, and this bullet struck him in the left arm in the medial aspect of the anterior portion of the shoulder. The bullet followed a downward and backward course of forty-five degrees to the vertical midbone of Leeper's body, passing through the left lobe of the lung and through the seventh thoracic vertebra. Two doctors testified that in order to receive the type of bullet wound that Leeper received, the gun would have had to be discharged above Leeper's left shoulder at the same angle of forty-five degrees that the bullet followed after it entered the body. They also testified the severed spinal cord would have rendered Leeper immobile and would have caused him to drop in his tracks. In addition, Leeper had abrasions on the top part of his nose, upper lip and on the right knee. His trousers had a tear in them at the right knee, which was not a bullet tear.

After the shooting, defendant called the officers and, when they arrived, Leeper was lying on his back partly on the grass to the right of the walk to the house and partly on the driveway, feet southeasterly. The first statement made to the officers by the defendant was: "That is the guy that threw the rocks in my window", and then he said: "I shot once at his legs, and then he started at me, and I let him have it right in the face." When the decedent was viewed in the car lights, defendant acknowledged he knew the fellow and that it was Slim Leeper. The decedent died in a Cedar Falls hospital without regaining consciousness. Certain photographs taken by one of the officers were admitted as exhibits. Two of them showed scuff

marks on the south and east doors near the bottom, which defendant claimed were made by Leeper's shoes. Mrs. Haffa did not leave the house that evening and did not testify in the trial.

The issues raised and argued by the defendant in the appeal are that the trial court erred (1) in overruling defendant's motion for a new trial for the reason that the alleged misconduct on the part of the assistant county attorney was shown to have prevented defendant from having a fair and impartial trial; (2) in overruling the defendant's motion for a directed verdict at the close of all evidence for the reason that the evidence failed to show as a matter of law that defendant did not act in self-defense at the time of the killing; and (3) in overruling defendant's motion to withdraw the charges of first- and second-degree murder from the jury in that there was no evidence introduced in support of either of such charges.

It is the State's contention the facts, reasonable inferences and permissible presumptions disclose malice aforethought, deliberation, premeditation and an intent to kill. They point to the use of the deadly weapon upon the decedent in a darkened porch, the decedent's unsteady but understandable haste in getting out of the doorway, accounting for a fall down the steps explanatory of his face and knee injury, plus the time lapse between shots, the course of the fatal bullet through decedent's body and his position when found, as proof of defendant's aggression and as furnishing the necessary elements of first-degree murder upon which a verdict by the jury could be justified. While one may certainly use such reasonable force as necessary to repel an attack upon one's property and family, apparently this attack from the rear without adequate warning, this shooting-of-fish-in-a-barrel manner of defense, did not appeal to the jury. While under the testimony of the taxi driver who brought Leeper to the premises, watched him walk unsteadily into the driveway, and who stated Leeper was in a jovial mood and told him he was going out to see his girl friend, and other similar evidence, the jury may have inferred that Leeper was not a prowler and was perhaps known to the defendant, it obviously believed a lesser verdict than first-degree murder was proper.

Other pertinent facts appear in the opinion.

█ I. Every person accused of a crime is entitled to a fair trial. It is so provided by the Constitution, statutes, and by general pronouncements of the courts. We have so announced many times and specific cases need not be cited. The State is also entitled to a fair trial. We have on many occasions reviewed matters where it was contended, as here, that there was misconduct on the part of the county attorney which deprived defendant of a fair trial.

█ Mere misconduct of counsel however is not enough alone to require the granting of a new trial, unless it appears to have been so prejudicial as to deprive the complaining party of a fair trial. State v. Jensen, 245 Iowa 1363, 66 N.W.2d 480; State v. Warren, 242 Iowa 1176, 1189, 47 N.W.2d 221; State v. Wheelock, 218 Iowa 178, 254 N.W. 313.

In State v. Cooper, 169 Iowa 571, 587, 151 N.W. 835, 841, we stated the rule, often cited thereafter, as: "The rule is that mere misconduct of counsel is not enough alone to require the granting of a new trial, unless it appears to have been so prejudicial as to deprive the complaining party of a fair hearing of his case by the jury on the evidence."

We also said therein: "The trial court having heard all that took place on the trial, we ought not to interfere with his discretion in refusing a new trial", citing State v. Thomas, 135 Iowa 717, 109 N.W. 900, State v. Waterbury, 133 Iowa 135, 110 N.W. 328, State v. Norman, 135 Iowa 483, 113 N.W. 340, and State v. Wilson, 157 Iowa 698, 141 N.W. 337.

██ It is true when the defendant submits himself as a witness he must answer in cross-examination on matters affecting his credibility as a witness, even though it may degrade him. The purpose of the cross-examination is to test the credibility of the witness and the accuracy of his knowledge of the subject matter. State v. Keul, 233 Iowa 852, 860, 861, 5 N.W.2d 849. Of course the purpose of the cross-examination must be confined to discrediting the one examined as a witness and not as a defendant. It is the latter that defendant complains of herein. He contends at various times in the cross-examination of the defendant six different questions were improperly asked by the county attorney. After defendant related his various activities since re-

tiring from dentistry, he was asked, "Did you engage in any bootlegging at any time?" He answered, "No, sir." Objection was made by defendant's counsel, overruled by the court, and then both the objection and ruling were withdrawn.

When the defendant withdrew his objection to the question on bootlegging, he cannot raise such objection for the first time on appeal since there is nothing to review. State v. Duff, 144 Iowa 142, 122 N.W. 829, 24 L. R. A., N. S., 625, 138 Am. St. Rep. 269. There is no trial court ruling for us to review. State v. Mauch, 236 Iowa 217, 17 N.W.2d 536; State v. Thom, 236 Iowa 129, 17 N.W.2d 96; State v. Tarr, 233 Iowa 659, 10 N.W.2d 55. In the latter case at page 662 of 233 Iowa, page 57 of 10 N.W.2d, we said we can "give no consideration to the merits or the demerits of the propositions of law raised for the first time in assignments of error on this appeal."

The defendant was then asked to repeat the purposes for which he said the buildings on the premises were used, and he answered, "Storage." The county attorney then asked, "Isn't it a fact that you used one of those buildings for a still?" which was promptly objected to, and the objection properly sustained. No answer was given and no motion made to strike the question, admonish the jury, or declare a mistrial. Consequently there is no such error attributable to the court here as is found in the recently-decided case of State v. Collins, 246 Iowa 989, 69 N.W.2d 31, which is strongly relied upon by defendant for reversal·

The next question listed related to defendant's profession and his property: "Did you purchase all these residences from the proceeds from your dentistry practice?" While the question undoubtedly is immaterial, we fail to find the implication degrading that he purchased these properties with funds received from other sources. Furthermore, defendant's objection was promptly sustained before answer. Few cases are tried that would not produce similar inquiries, and for us to find such attempts to elicit immaterial or incompetent testimony on cross-examination sufficient grounds for a new trial would permit few verdicts to stand. We do not think it was prejudicial herein. See State v. Jensen, supra.

At still another time defendant complains he was asked in cross-examination, after he had testified he owned a cottage in Casebeer Heights, "Do you recall that cottage being raided by state agents?" Objection was promptly made, sustained and no answer received. Defendant contends the inference was that the property belonged to him when raided and that he was a party to the activity raided. The question was immaterial, though the State contended it was to test the memory of the witness, which usually is proper cross-examination. The court, at the request of the defendant, did "caution" the assistant county attorney to "keep in mind the purpose of the cross-examination * * *", and the matter was pursued no further. We do not believe asking the question was prejudicial.

At a still later occasion the defendant objected to the question, "Did you ever deal in war surplus property in Dallas, Texas?" as immaterial, irrelevant and improper cross-examination. The objection was sustained over the claim of the State it was examining as to defendant's business activities testified to in direct examination. We also fail to find prejudice to defendant by this question.

There was no error in any of the rulings of the trial court nor any request wrongfully denied defendant in relation to any of the cross-examination complained of, and we must therefore conclude any error for which reversal would be justified would come from an abuse of the court's discretion in denying the motion for a new trial on the alleged misconduct of the county attorney in asking the questions.

As we have said many times, the granting of a new trial in such instances is largely within the discretion of the trial court. State v. Jensen, supra, and cases cited therein. If the county attorney acted in bad faith, and the action would likely distract from the issue in the case, the trial court was in the proper position to know of it, and of course if it appears to have been so prejudicial as to deprive the complaining party of a fair trial or hearing by the jury on the evidence a new trial must be granted.

We have examined the cases cited by defendant and most, if not all, relate to a persistent attempt to get improper in-

formation or answers to the same question from various witnesses, though the same or a similar question had been held improper by the court. State v. Poston, 199 Iowa 1073, 203 N.W. 257. Clearly such action would be in bad faith and disclose a prejudicial attempt on the part of counsel. For a clear example, also see State v. Hild, 240 Iowa 1119, 1154, 39 N.W.2d 139. Such is not the case before us, and we do not believe the questions complained of were improper to the extent that prejudice as a matter of law resulted therefrom. See State v. Neifert, 206 Iowa 384, 220 N.W. 32.

Defendant refers to our recent decision in the Collins case, supra, where we said the evidence of guilt was not strong, and where a motion for a mistrial was made, argued and overruled by the trial court. Said ruling was the basis of that appeal and the reversal. We think there are important distinctions between that case and the case at bar. Here, there was no motion made for a mistrial, and in one instance even the objection was withdrawn, leaving no ruling upon which error could be predicated. Others were of little consequence and, while immaterial, did not clearly tend to discredit the defendant. Some related to matters testified to on direct examination, though not tending to confirm or deny any issues in this case. The questions could, with possibly one exception, be tests of the memory and credibility of the witness, and such inquiries to a witness as a witness are proper. We fail to find as a matter of law that the questions, promptly objected to and sustained without answers, significantly detracted from the issues in this case or were effective in influencing the jury adversely to the defendant. The trial court was in the best position to observe and decide this question and we are not convinced there appeared prejudicial error in his ruling such as to justify a reversal on this ground.

■ A fair trial does not necessarily mean an absolutely perfect trial. If such should be the rule, the prosecuting attorney would not dare to ask any question of a defendant which might be held incompetent or immaterial, and then he, and not the court, would be required to determine that question, and at his peril if the court should later determine, when the question was

asked that the evidence sought was inadmissible. We find no abuse of the trial court's discretion in denying the motion for a new trial due to alleged prejudicial misconduct of the county attorney in cross-examining defendant.

II. Defendant also contends prejudicial error occurred, first during defendant's closing argument, and later during the State's closing argument. In his argument defendant referred to the State's failure to place in evidence the shoes worn by the decedent. Defendant claimed the exhibit picture showed damage to the right shoe due to kicking upon the doors of the residence. Also there was some inference that the county attorney had thus failed to perform "the duty of the State to introduce all evidence, whether it points to guilt or innocence." The prosecutor immediately produced some shoes and said, "May it please the court, and Mr. Beecher, I have the shoes here. The State didn't introduce them because———." On objection by defense counsel to an explanation, the court said, "The objection is sustained" and "The State's attorney will have his opportunity to make his argument." In his final argument he attempted to explain why the shoes were not offered as exhibits, over the objection of defense counsel who claimed "counsel has no right here to discuss the shoes before this jury. They are not in evidence." We do not find the explanation was prejudicial to defendant. The objection to the offer of the State to stipulate that the shoes go into the record was properly sustained, and on the court's admonition the matter of the shoes was not again mentioned.

Here again we must repeat that we will not reverse a case or grant a new trial for statements made by the prosecutor during the course of trial unless the statements are prejudicial and deprive the defendant of a fair trial.

In the case of State v. Dale, 225 Iowa 1254, 1257, 282 N.W. 715, 716, we said: "Such matters are peculiarly within the discretion and power of the trial court, who is in a position to see and hear all that takes place on the trial, and this court should not interfere unless it appears that the alleged misconduct has been so prejudicial as to deprive the defendant of a fair hearing."

See State v. Berlovich, 220 Iowa 1288, 263 N.W. 853.

In State v. Stennett, 220 Iowa 388, 395, 260 N.W. 732, 736, we said: "Complaint is also made against certain remarks made by the prosecuting attorney in his address to the jury. While the remarks in question are not to be commended and ought to be avoided, the question of whether they amount to misconduct such as to warrant a reversal is primarily for the presiding judge, and we are not disposed to hold them reversible error unless there is a manifest abuse of discretion."

We find no such abuse in the court's denial of a new trial based on misconduct of the county attorney in his justifiable reply to defendant's inference of willful secretion of evidence. We think the reply proper, and believe no prejudice resulted to defendant due to these remarks in final argument.

III. Defendant contends the evidence failed as a matter of law to show that he did not act in self-defense. The trial court, we think, properly overruled his motion to direct upon that ground. As we have often said, even in criminal cases, in passing on the motion to direct, we must view the record in the light most favorable to the State. State v. Hammer, 246 Iowa 392, 395, 66 N.W.2d 490, 491; State v. Rutledge, 243 Iowa 179, 184, 47 N.W.2d 251; State v. Williams, 245 Iowa 401, 403, 62 N.W.2d 241. The case should be submitted to the jury if there is substantial evidence tending to support the charge. State v. Anderson, 239 Iowa 1118, 1125, 33 N.W.2d 1, 6.

In State v. Hammer, supra, we said at page 396 of 246 Iowa, page 492 of 66 N.W.2d: "It is only when the State's witnesses so contradict themselves as to destroy entirely the probative effect of their testimony we can say a question of law is generated."

It must be conceded the Iowa rule is that the State must prove beyond a reasonable doubt that the accused did not act in self-defense. State v. Sedig, 235 Iowa 609, 16 N.W.2d 247, and cases cited therein. Self-defense is a defense which seeks to excuse or justify a killing. It is a doctrine of necessity. It has been correctly said, what particular facts will justify a killing is a question of law for the trial court, but whether such facts actually exist in a particular case is usually a question for

the jury. 41 C. J. S., Homicide, section 344, page 108. There were no errors in the court's instructions relating to acts that would justify a killing.

The rule is well settled, to justify homicide on the · ground that it was committed in self-defense, four elements must be present: (1) the slayer must not be the aggressor in provoking or continuing the difficulty that resulted in the killing; (2) he must retreat as far as is reasonable and safe before taking his adversary's life, except in his home or place of business; (3) he must actually and honestly believe he is in imminent danger of death, great bodily harm, or some felony, and that it is necessary to take the life of his assailant to save himself therefrom; and (4) he must have reasonable grounds for such belief. State v. Holder, 237 Iowa 72, 20 N.W.2d 909; State v. Emery, 236 Iowa 60, 17 N.W.2d 854; 26 Am. Jur., Homicide, section 126, page 242. Our principal concern herein is the first element, and we shall discuss the testimony and circumstances relating to it. If the evidence justifies a finding that defendant is the aggressor, then the other elements need not be discussed and it is sufficient to say there appeared to be no retreat claimed. Rather it is claimed retreat was not required, but that reasonable grounds were apparent to justify defendant's fear of bodily injury which would justify the shooting. Defendant claims the fatal shot was fired through fear and not in a spirit of revenge (State v. Bone, 114 Iowa 537, 547, 87 N.W. 507), but his first statement to the officers of "That is the guy that threw the rocks in my window" could be taken by the jury as indicative of the latter emotion.

It is well settled that where the evidence is conflicting or of such a character that different inferences might reasonably be drawn, it is a question of fact for jury determination as to whether or not the defendant acted in self-defense. State v. Holder, supra.

We announced the rule applicable here in the case of State v. Sedig, supra, 235 Iowa 609, 16 N.W.2d 247, that where a defendant, who is the only living witness of a fatal shooting, interposes a plea of self-defense in justification of

homicide, the State is not required to prove by direct evidence that the killing was not in self-defense, but may properly resort to circumstantial evidence. Also see State v. Burzette, 208 Iowa 818, 222 N.W. 394.

It is the State's contention that the physical facts and circumstances in evidence show that the defendant armed himself and laid in wait for Leeper's appearance; that he did not carry a flashlight to learn the identity of the visitor as he was instructed to do by the sheriff; that he waited in the shadow of the tree until the visitor was in the vestibule doorway, and shot at him almost at once following his challenge to "come down out of there." How he came to miss the figure in the dark doorway even the sheriff could not understand. At any rate the State contends the circumstantial evidence shows Leeper came out of the enclosed doorway toward the defendant, which was the only way he could go, and in his haste to escape the bullets, fell down the steps, skinning his face and tearing his trousers at the knee; that when he tried to rise he was shot by the defendant and killed. The physical evidence tends to confirm that theory. The neighbors who heard the shots explained there was some time between the two shots fired into the door and the last one which killed Leeper. This also tended to refute defendant's testimony that Leeper, with an oath, rushed in anger from the doorway, arms outstretched to crush defendant. The time thus required would not likely cover a period of time equal to the time it would take for the neighbor Ethel Strein to get out of her bed, get her slippers, go to her south window, and raise the shade and the window, between the next to the last and the last shot. The testimony of defendant as to the attempted break in, the kicking and pounding, and the language used by Leeper, may or may not have been believed by the jury. The defendant himself testified he had not ordered Leeper to stay off his property, but on the other hand had employed him on those premises off and on for about five years. From the circumstances shown, the jury could well have determined defendant knew Leeper's southern or Missouri drawl and intentionally became the aggressor, especially if it also found Leeper was prostrate before the defendant when he fired the fatal shot. Of course the weight

to be given the testimony of the parties is determined by the jury itself. We think there were ample circumstances and physical facts shown by the State which would justify the submission of the question of self-defense to the jury and to substantiate its determination that the defendant did not reasonably act in self-defense.

IV. Defendant's final contention is that the trial court erred in submitting, for consideration by the jury, the crimes of first- and second-degree murder. As we said in the recent case of State v. Christie, 243 Iowa 1199, 1204, 53 N.W.2d 887, 889, 54 N.W.2d 927: "The distinctions between murder and manslaughter, and between first- and second-degree murder are familiar. Any unlawful killing with malice aforethought is murder. State v. Leib, 198 Iowa 1315, 201 N.W. 29. To constitute murder in the first degree there must be the additional elements of deliberation, premeditation and intent to kill. State v. Sipes, 202 Iowa 173, 209 N.W. 458, 47 A. L. R. 407; Fouts v. The State, 4 (G. Greene) Iowa 500."

We should remember, in ruling on the motion to withdraw, the facts disclosed must be considered most favorable to the State.

Under the record evidence related, there was sufficient proof to raise the presumption of malice by the admitted use of the deadly weapon. State v. Fischer, 245 Iowa 170, 172, 60 N.W.2d 105. Here, as in the Christie case, supra, the argument is advanced that while that presumption is permissible, we may not go further and say that having thus found the intent we may therefrom draw the inference of deliberation and premeditation. In the Christie case we reviewed the cases cited in support of this theory and rejected the argument. Much depends upon the facts and circumstances as to whether or not such a further inference is possible. Here also there were no eyewitnesses to the assault except the defendant himself. However, the facts and the circumstances do not necessarily show that Leeper was making an unwarranted attack on the defendant, or even his property. True, defendant claims Leeper kicked and pounded upon the doors and broke a latch, and submitted photos showing scratch marks on the doors, but there is no testimony as to their

1292

existing conditions prior to that time. No persons testified to hearing the alleged shouting, pounding and kicking, though they did hear the shots. It is elementary a mere trespasser is not making an unwarranted attack such as to justify the use of a deadly weapon upon his person or to kill him, and we need not here repeat the distinctions pointed out in the Christie case, supra, nor review the cases discussed therein, including the case of State v. Wilson, 234 Iowa 60, 11 N.W.2d 737, relied upon by defendant. Though defendant contends he was justified in shooting to prevent a breaking and entering into his home, we do not agree that the evidence discloses, as a matter of law, any more than a determined effort to arouse the occupant and obtain willing admittance. If there were more, such issue was for the jury to determine. The law will not, out of tenderness for human life and the frailties of human nature, permit the taking of it to repel a mere trespass, or even to save a life where the assault is provoked. Beard v. United States, 158 U. S. 550, 561, 15 S. Ct. 962, 39 L. Ed. 1086. The evidence does disclose a period of time between the last shot and the next to the last shot, which is not well explained by defendant. As before stated, the neighbor Ethel Strein had sufficient time, after she heard two shots come close together, to lie in her bed "probably half a minute", get out of bed, get her bedroom shoes and housecoat, then go over to the south window, and raise the shade and window, before she heard another shot, which was the final one. Ample time is shown for deliberation, premeditation and the formation of an intent to kill.

While we have said many times the essential premeditation need not be of long duration (State v. Hofer, 238 Iowa 820, 834, 28 N.W.2d 475; State v. Christie, supra, and cases cited therein), there is no convincing evidence that there was a sudden emergency, decision or impulse responsible for the final shot that killed Leeper, indeed if there was any to justify the firing of the two shots into the dark doorway where Leeper stood.

We said in State v. Powell, 237 Iowa 1227, 1238, 24 N.W.2d 769, 775: "The other elements of premeditation and deliberation are likewise provable by the facts and circumstances sur-

rounding the homicide. We have said premeditation and deliberation need not exist for any particular length of time [citing cases]."

We also quoted with approval in the Christie case, supra, on page 1207 of 243 Iowa, page 891 of 53 N.W.2d, from State v. Baker, 143 Iowa 224, 229, 230, 121 N.W. 1028, 1030, as follows: " 'This court has never held that the trial judge could be required by motion to enter into a critical examination of the evidence, where the proof tended to show homicide by violence, with malice aforethought, for the purpose of determining whether in his opinion the act was deliberate and premeditated.' "

It may be conceded that there might be cases where the circumstances of the homicide were such that the court could say, as a matter of law, that there was no evidence of deliberation and premeditation, but that is the exceptional case and is not the case before us. The unexplained facial and knee injuries, the course of the bullet through decedent's body, and the time lapse between shots are ample evidence upon which a jury could find not only malice, but premeditation, deliberation and intent to kill.

Here the defendant selected a deadly weapon loaded with steel-jacketed shells, instead of a flashlight, and the jury could well find he went to shoot and not to discover the identity of any prowler as he was asked to do by the sheriff.

We have even said under certain circumstances it is proper to submit the question of first-degree murder to the jury although there is no specific proof of deliberation and premeditation apart from the proof of the violent infliction of a mortal wound. State v. Baker, supra. Also see State v. Heinz, 223 Iowa 1241, 1258, 1259, 275 N.W. 10, 12, 114 A. L. R. 959.

As pointed out by Judge Smith in the Christie case, supra, this is not making one inference the basis of another, but instead recognizes the fact that deliberation, premeditation and specific intent to kill, as is true of mental processes generally, are not ordinarily susceptible of direct proof but must be deduced from words, conduct and circumstances accompanying them.

There is no explanation by defendant of Leeper's facial in-

jury. He was lying face up when found by the officers, giving some inference he fell backward when shot, as he might well do if hit "in the face" while rising, and would not likely do if shot "in the face" while charging head down toward defendant.

It was for the jury to determine under appropriate instructions, of which in the case at bar no error is alleged or argued, whether or not there was premeditation, deliberation and specific intent to kill, and therefore the court was correct in refusing to withdraw from the jury the issues of first- and second-degree murder.

From a very careful examination of the whole record we conclude defendant had a fair trial and that the judgment and sentence should be affirmed.—Affirmed.

All JUSTICES concur.