STATE of Iowa, Appellee,

v.

Phyllis J. BADGETT, Appellant.

No. 52753.

Supreme Court of Iowa.

May 6, 1969.

Morris & Morris, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., and James R. Martin, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

LARSON, Justice.

This criminal proceeding was based upon an indictment returned by the Polk County Grand Jury on March 9, 1967, in which defendant Phyllis Jean Badgett was charged with the crime of murder as defined in sections 690.1 and 690.2 of the 1966 Code. Defendant entered a plea of not guilty and, following trial by jury, was convicted of second degree murder on May 18, 1967. On June 5, 1967, the court sentenced defendant to a term of not to exceed twenty-five (25) years in the Women's Reformatory in Rockwell City, Iowa. She appeals. We affirm.

The record disclosed that a party commencing in the early afternoon of Sunday, December 19, 1966, was held at 841 – 16th Street, Des Moines, to celebrate the birthday of the decedent, William Badgett. During the course of the party there was drinking and gambling. At one point early in the evening defendant's husband came to her and asked for money. She testified that she gave him $60 or $70, whereupon he returned to his gambling. Some 30 or 40 minutes later he again asked her for money. She told him that she had given him all their money and that she had no more. This angered him. He threatened her and took her set of keys to that building, which was across the street from their residence.

Defendant testified this treatment so upset her that she went over to their apartment at 840 – 16th Street. About 15 or 20 minutes later she returned to the party, but was denied admittance by decedent. Re-turning to their home she cleaned up, changed clothes, and went back to the party. Finding everyone had gone, she obtained a jacket from their home and started out on foot to find her husband. She first went to Claudine Redman's home on 12th Street, about 11 blocks away. It was then after midnight. She carried a paring knife in her jacket. He was not there and, after a conversation of some 20 minutes with Claudine in which she admitted saying, "Him and that gambling and drinking, sometimes he makes me so mad I could kill him" or something to that effect, she left and went to the home of another friend, Mrs. Bumpus, on 13th Street. After determining he was not there, she left for home by taxicab. Finding no one at home, she changed to a car coat and walked about three blocks to the Edna Lewis house at 13th and Center Streets. There she found her husband and asked him to come home. After some persuasion by defendant and their friends, they left for home in a friend's automobile. They stopped at 841 – 16th Street and went inside briefly. Decedent, without defendant, went to their apartment and she followed a few minutes later. Defendant testified that as she went in the inside door decedent said, "Bitch, you better give me my money", and then struck her with his fist knocking her down. An argument developed, during the course of which he asked her for his "safe papers", a list of how to open various types of safes. She refused to produce them. Thereafter they fought "all over the bedroom." She further testified decedent told her, "If you don't give me my money, I'm going to kill you", and she said she was sure he would carry out his threats and became afraid. After knocking her down again, she said he started choking her and she hollered for help. A neighbor lady heard this call but did not interfere. Somehow, defendant said, she got ahold of a knife that was lying on the dresser and stabbed him with it in an effort to get a release from his grasp. She claims she did not realize he was badly hurt until he stood up and she saw blood coming from his mouth. Then

she ran across the street and asked her friends to send for an ambulance. Police arrived and she was taken into custody when it appeared her husband was dead.

The appellant assigns five errors, contending the trial court erred (1) in refusing to allow defendant's witness, Margaret Gatewood, to testify to certain instances of physical violence by decedent directed at defendant, in that it was essential to defendant's case, (2) in refusing to allow defendant to testify as to decedent's reputation, actual character, and criminal record, (3) in refusing to admit defendant's Exhibit "A" consisting of the "safe papers" testified to by defendant, (4) in not finding as a matter of law that the prosecution failed to overcome the burden of proof in self-defense, and (5) in submitting Instruction No. 12 relating to decedent's physical characteristics, but failing to instruct as to his character and reputation. Consideration thereof will not be restricted to that order. The matters complained of in assignments (1) and (2) are somewhat obscure, but we shall attempt to consider these complaints together.

■ I. Self-defense is a doctrine of necessity which seeks to excuse or justify a homicide. State v. Haffa, 246 Iowa 1275, 1288, 71 N.W.2d 35, 43, certiorari denied 350 U.S. 914, 76 S.Ct. 198, 100 L.Ed. 801; State v. Sedig, 235 Iowa 609, 16 N.W.2d 247, and cases cited therein.

■ Whether the facts disclosed are sufficient to justify a killing in self-defense is usually a question of law for the trial court, but whether such facts exist is generally a question for the jury. If there is substantial evidence to support the claim, the case should be submitted to the jury. State v. Anderson, 239 Iowa 1118, 1125, 33 N.W.2d 1, 6; State v. Hammer, 246 Iowa 392, 395, 66 N.W.2d 490, 492; State v. Haffa, supra; 41 C.J.S. Homicide § 344, page 108.

■ To justify homicide on the ground that it was committed in self-defense, four elements must be present: (1) the slayer must not be the aggressor in provoking or continuing the difficulty that resulted in the homicide; (2) he must retreat as far as is reasonable and safe before taking his adversary's life, except in his home or place of business; (3) he must actually and honestly believe he is in imminent danger of death or great bodily harm and that the action he takes is necessary for self-preservation—this danger need not be real, but only thought to be real in the slayer's mind, acting as a reasonable prudent person under the circumstances; (4) he must have reasonable grounds for such belief. State v. Parker, Iowa, 151 N.W.2d 505, 511; State v. Haffa, supra; State v. Holder, 237 Iowa 72, 20 N.W.2d 909; State v. Sedig, supra; State v. Johnson, 223 Iowa 962, 967, 274 N.W. 41, 44; 26 Am.Jur., Homicide, section 140.

■ Of course, the burden is upon the State to prove beyond a reasonable doubt that the accused did not act in self-defense. State v. Haffa, supra; State v. Sedig, supra. See also 40 Am.Jur.2d, Homicide, section 249. However, this does not alter the State's burden in any criminal matter to prove beyond a reasonable doubt that the crime charged had been committed. Our problem is, does the evidence, viewed in a light most favorable to the State, require submission of these issues to the jury?

The State contends there was substantial evidence which tended to prove that defendant was the aggressor in provoking and continuing the difficulty that resulted in the homicide, that she did not do everything possible to avoid this conflict, that she did not honestly believe she was in imminent danger, and that she was not afraid of her husband.

On the other hand, appellant contends the evidence established as a matter of law that she did act in self-defense, that the State's evidence was not sufficient to overcome that defense, and that her motion for a directed verdict should have been sustained.

II. In considering a claim of insufficient evidence to sustain a conviction, we of course must view the evidence in the light most favorable to the State. State v. Wesson, Iowa, 149 N.W.2d 190, 192, and citations. It is not our function to decide disputed fact questions in such cases. That is the function of the jury. State v. Horrell, Iowa, 151 N.W.2d 526, 528; State v. Wimbush, Iowa, 150 N.W.2d 653; State v. Frink, 255 Iowa 59, 64, 120 N.W.2d 432, 435, and citations; State v. Haffa, supra, 246 Iowa 1275, 71 N.W.2d 35; State v. Hammer, supra, 246 Iowa 392, 395, 66 N.W.2d 490, 492.

In State v. Hammer, supra, we said at page 396 of 246 Iowa, page 492 of 66 N.W. 2d: "It is only when the State's witnesses so contradict themselves as to destroy entirely the probative effect of their testimony we can say a question of law is generated."

It is not necessary that the State prove by direct evidence that the accused did not act in self-defense; circumstantial evidence is sufficient. State v. Haffa, supra; State v. Sedig, supra, 235 Iowa 609, 16 N.W.2d 247; State v. Burzette, 208 Iowa 818, 222 N.W. 394.

After careful review of the record and transcript filed herein, we are satisfied there was sufficient evidence, direct and circumstantial, for jury submission on the issues of guilt and self-defense, and that it fully sustains the verdict rendered. Although defendant offered an explanation for the damaging circumstances revealed, such as her reason for carrying a knife while out alone at night in that neighborhood, she admitted that she threatened to kill her husband that night, that she preferred knives as weapons, and that she carried one in her jacket as she sought him.

It further appears defendant was greatly disturbed by decedent's treatment of her at the party and that she left it and went to their apartment on two occasions, that she was disturbed by information that her husband was leaving her for another woman, and that she, being a strong 190-pound woman, had been able to take care of herself in fights with him over the years. In addition, the knife used in this fracas had been left in a convenient place in the bedroom and, after she had used it to stab her husband two or three times, she hid it under the bed. In addition to the chest wound, the decedent also had a knife cut on one hand. Under this evidence the jury could and did find she was the aggressor and did not act in self-defense.

The court committed no error in refusing to hold as a matter of law that defendant had sustained her claim of self-defense.

III. Appellant next complains of the exclusion of certain evidence offered in her behalf to show her husband's violent acts toward her, his criminal record, which was known to her, and the existence of an exhibit, called "safe papers", which she claims helped trigger the fatal encounter. She maintains this evidence was essential to show his true character, the aggravation causing the encounter, and her genuine fear for her life.

Evidence of the violent and dangerous character of a claimed aggressor is admissible to show, or as tending to show, that defendant acted in self-defense, or, in other words, under such circumstances as would have naturally caused a person of ordinary reason to believe that he was, at the time of the killing, in imminent danger of losing his life or suffering great bodily harm at the hands of the decedent. Thus, if there is the slightest evidence reasonably tending to show that the killing was in self-defense, evidence of the violent and dangerous character of the decedent should be admitted. State v. Rhone, 223 Iowa 1221, 1231, 1232, 275 N.W. 109, 116. In discussing this rule the court quoted from State v. Thompson, 49 Or. 46, 88 P. 583, 124 Am.St.Rep. 1015, 1030, which states: "The knowledge of the defendant, actual or presumptive, of the bad character or reputation of the deceased may be established in either of four ways, namely: (A) by proof of defendant's

knowledge of decedent's actual character and disposition, acquired by personal observation and experience; (B) by information communicated to him by others; (C) by proof of defendant's actual knowledge, in common with others, of the general reputation of the deceased in the community in which he lived; and (D) by proving, first, the bad reputation of the deceased, and, secondly, a long and intimate acquaintanceship between defendant and deceased, * * *."

Even a casual examination of this record discloses considerable and substantial evidence of the actual character and general reputation of the decedent. It tended to show him as a violent, dangerous person, and that defendant had full knowledge thereof. She so testified. The record is filled with instances of threats and violence toward her, and no relevant evidence of his reputation in that community was rejected by the court.

Nevertheless, appellant contends the court erred in sustaining the State's objection to the answer of the witness Margaret Gatewood to the question, "Have you at any other time heard him make oral threats toward her?" She previously had testified she had been acquainted with the defendant and decedent for approximately eight years and was a close personal friend. She had testified they were at a party at her home after decedent had been released from prison the last time in 1965 or 1966. At that time defendant and her husband had gotten into a fight and decedent had "smacked" defendant and has accused her of seeing other men. Since then she had observed the decedent physically abuse the defendant and threaten her with a knife, but stated that she could not hear the argument because they were in another room. She could recall no other incidents of physical violence except one, which is the subject of this complaint. In answer to the above question, Margaret Gatewood said: "He drug her down the alley one day by her hair and choked her." Among the grounds of objection urged by

the State were: "Incompetent, irrelevant, and immaterial", "The statement by the witness is not responsive," was not anticipated, and "may be too remote in point of time." The trial court sustained the objection without specifying the ground and, on motion, struck the answer. It did direct the reporter to repeat the question to the witness, but again she volunteered, saying: "I said he drug her down the alley one day and choked her, but I didn't hear any conversation. I just saw him drag her down the alley. They were fighting." The motion to strike for the reasons previously urged was sustained.

■ Although the rule is well settled in this jurisdiction that the sustaining of an objection or a motion to strike will be upheld if there is any specific ground, whether or not called to the court's attention, upon which the testimony could be excluded (Ladd, Cases and Materials on the Law of Evidence, 2d Ed., page 47; McCormick on Evidence, Admission and Exclusion, page 118; 22 Iowa L.Rev. 609, at 627), we are not aware of any sustainable objection to this testimony and must hold these objections should have been overruled.

■ Testimony as to what the witness Gatewood saw at that time was relevant and material evidence tending to prove decedent's bad character, but obviously the answer given to the question was not of sufficient import to require a new trial. Apparently counsel did not so consider it until he sought grounds for this appeal, for he failed to ask the witness what she *saw* on that occasion. At best, the testimony of this witness referred to one of decedent's lesser acts of violence toward defendant, was merely cumulative in nature, and added little to what she had already related. We think the court erred in those rulings but are not convinced it was reversible error.

■ It is well established that the exclusion of evidence tending to show a certain fact where the fact in question is fully

established by other admitted evidence is not error. State v. Troy, 206 Iowa 859, 220 N.W. 95, 221 N.W. 370; State v. Bading, 236 Iowa 468, 478, 17 N.W.2d 804, 810; State v. Myers, 257 Iowa 857, 862, 135 N.W.2d 73, 76. Except for the exclusion of the witness Gatewood's voluntary statement and appellant's own attempt to testify regarding decedent's prison record, we find no other specific instance set out or argued, and we conclude her assignment of error based upon the court's failure to accept all her evidence tending to prove decedent's bad character and her fear of him is without merit.

The witness Jacqueline Higgins testified she was well acquainted with both parties, knew they drank alcoholic beverages, and that she had seen decedent make physical attacks on defendant, the last time being in December 1966. She testified in detail and said decedent had threatened to kill defendant during an argument when they were "cussing" each other. Prior to that time she had seen decedent slap defendant as they sat in a car.

The testimony given by both the witnesses Gatewood and Higgins detailed decedent's acts, threats, and conduct, all of which tended to prove both his bad reputation in the community and his bad character. Furthermore, the record is replete with testimony as to his record as a felon, his propensity to go armed with knife and gun, and of defendant's awareness of these circumstances during their married life.

In her argument appellant does not take issue with our previous holding that proof of bad reputation cannot be established by proof of specific acts. State v. Rhone, supra. She maintains the specific acts to which these witnesses testified were not offered for the purpose of establishing the bad reputation of the decedent, but for the sole and exclusive purpose of illuminating and defining a course of conduct and abuse to which defendant had been subjected over a period of years. We think the trial court granted wide latitude in allowing such testimony. It certainly was sufficient to establish a logical foundation supporting defendant's testimony as to her feeling toward decedent and her genuine fear of him. All this evidence was before the jury.

James L. McGuire, of Des Moines, a retired officer who had known decedent for many years, did testify as to decedent's reputation. He said it was "very poor, very bad," and that decedent was a violent and quarrelsome individual.

In argument appellant contended the trial court erred in refusing to allow her to testify as to the reason for decedent's original confinement or as to "unusual happenings" during his original prison confinement in Missouri several years before their marriage. We are not convinced this was reversible error, if error at all. Although, generally, evidence of a violent act or conduct over 11 years before is admissible to show knowledge of an assailant's character and the basis of fear, the exclusion of such evidence will not be reversible error unless the exclusion amounts to an abuse of the court's discretion. State v. Leeper, 199 Iowa 432, 440, 200 N.W. 732, 736. Defendant was allowed to testify as to decedent's Iowa prison record and his most recent confinement for breach of parole from the Iowa penitentiary. She gave as the reason for this confinement, for having a pistol in a gambling joint. That evidence was admissible to show his disposition and present character, but how his prison record many years before would alter or add to her present awareness of his true character is not so clear. In any event, we hold the exclusion of his wrongdoing long before their marriage by the trial court in the exercise of its sound discretion is not alone sufficient grounds for reversal. State v. Leeper, supra. Since no offer of proof was made to show its present applicability, it is fair to assume it was merely accumulative.

Unless the complaining party points out wherein it is claimed the trial

court abused its discretion in admitting or excluding other evidence relating to acts of violence of decedent, we have no basis for review. Therefore, any error relating thereto must be deemed waived. State v. Peterson, Iowa, 155 N.W.2d 412, 413.

Defendant herself testified that her husband had been mean to her early in their marriage, but got better. After his parole from the Iowa State Penitentiary, she said he became worse. Although testifying that she was scared of him during this period, she said she thought she could talk to him and pacify him. She had done so before, but during this fight she recalled a previous occasion while he was home on parole in 1964 when he almost choked her to death, saying the next time he'd "do it up right." The thrust of all appellant's evidence tended to show that her husband was apt to do what she claimed he did and to show he was the aggressor. We find no abuse of the court's discretion on these evidentiary rulings and conclude that her self-defense contention was fully presented to the jury.

IV. In her next assignment of error appellant contends the court erred in failing to rule on the admissibility of defendant's Exhibit "A", designated as "safe papers". This offered exhibit was objected to by the State and apparently no ruling was made thereon.

Immediately before the close of defendant's direct examination this occurred:

"MR. MORRIS: At this time we would like to offer into evidence Defendant's Exhibit 'A'.

"MR. FENTON: Your Honor, the State objects to the introduction of Defendant's Exhibit 'A' on the grounds it is irrelevant, incompetent and immaterial.

"THE COURT: The Court will look at Exhibit 'A'. You may proceed with the examination, and I will make a subsequent ruling."

At the close of all the evidence and after the State had rested the trial court asked,

"That concludes the testimony in this case, gentlemen?"

To this defendant's attorney responded: "The defense has nothing further, Your Honor. We rest."

■ No request for a ruling was made by defendant's counsel. The trial court made no adverse ruling on defendant's offer of Exhibit "A". Resultantly we have nothing to review regarding the offer.

■ 4 C.J.S. Appeal and Error § 321 c, pages 1024, 1025, states: "If it does not appear from the record that there was a ruling thereon in the trial court, the appellate court will not, as a general rule, consider alleged error * * * with respect to the admission or exclusion of evidence, * * *. Generally, before the trial court can be put in error for the admission or rejection of testimony, it must be clearly shown that the attorney who considered himself aggrieved insisted on a ruling and that the court failed or refused to make one, or that the court, on such an insistence, made a ruling which was erroneous." See also 5 Am.Jur.2d, Appeal and Error, section 709.

It was defendant's duty to request or demand a ruling on her offer of Exhibit "A". Since no such request or demand was made, the offer might be deemed waived. In re Estate of Coleman, 238 Iowa 768, 770, 28 N.W.2d 500, 502; Dougherty v. Sioux City, 246 Iowa 171, 195, 196, 66 N.W.2d 275, 288; Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 721, 107 N.W.2d 85, 93; Iowa Development Co. v. Iowa State Highway Comm., 252 Iowa 978, 984, 108 N.W.2d 487, 491.

■ Assuming, arguendo, the trial court rejected defendant's offer of Exhibit "A", this rejection does not amount to reversible error.

Defendant asserted that after decedent first assaulted her when she followed him home, he demanded his papers because he "had something planned." She said they

were papers that he brought home from prison which told "how to open any safe you make." She described the "safe papers" and explained that they listed 45 different names of safes and told how to drill and open those safes. She testified they were in his handwriting.

■ The relevancy of demonstrative evidence is usually a question to be determined by the proper exercise of the trial court's discretion. State v. Drosos, 253 Iowa 1152, 1159, 114 N.W.2d 526, 530; State v. Christie, 243 Iowa 1199, 1210, 53 N.W.2d 887, 892, 54 N.W.2d 927; 2 Wharton's Criminal Evidence, 12th Ed., section 673. The trial court has considerable discretion in determining the admissibility of demonstrative evidence and considerable latitude is allowed therein. State v. Ford, 259 Iowa 744, 749, 145 N.W.2d 638, 641, and cases cited. Something must be left to the discretion of the trial court, which has the entire situation before it and is best qualified to give due consideration to the entire situation existing when the offer is made and the objection interposed. State v. Stansberry, 182 Iowa 908, 917, 166 N.W. 359, 362; State v. Christie, supra.

The problem here is whether this sound judicial discretion has been abused. Appellant does not claim evidence of these papers was not before the jury. The "safe papers" had been fully described by the defendant and she had been permitted to explain their role in precipitating the fight. There was no dispute about the authorship or the contents of those papers, and the State did not deny her testimony that the information contained therein was an issue in this altercation. It is difficult to see how the exhibit, which was not physically involved in the fight, would be vital to this issue. On the other hand, it might unduly emphasize this alleged phase of the dispute. In any event, we find no abuse of the court's sound judicial discretion in this instance and no reversible error. See State v. Smith, 215 Iowa 374, 379, 245 N.W. 309, 311.

V. Appellant next contends the trial court erred in the submission of Instruction No. 12 in that it did not include therein reference to decedent's character and reputation, but only referred to his "physical characteristics."

Instruction No. 12 was a lengthy instruction on self-defense, which states in part: "And in this connection you may and should consider the physical characteristics of the said William Badgett and the defendant, as shown by the evidence, and all other evidence in the case in determining whether or not the defendant acted in defense of her person * * *."

Although it would have been proper to include specific consideration of the decedent's character and reputation along with his physical characteristics, she *made no objection to this instruction* at the time of trial and made no request for additional or more explicit instructions before they were given.

■ We have held many times from our earlier decisions to our recent ones that a party desiring an additional or more explicit instruction should timely request it. A defendant's failure to present an instruction on such a matter or make known to the court his wish to so instruct deprives him of a basis for successful appeal in this court for failure to do so. State v. Russell, 245 Iowa 1190, 1205, 66 N.W.2d 35, 43; State v. Jensen, 245 Iowa 1363, 1371, 66 N.W.2d 480, 484; State v. Holoubek, 246 Iowa 109, 112, 66 N.W.2d 861, 863; State v. Horrell, Iowa, 151 N.W.2d 526, 532; State v. Wessling, Iowa, 150 N.W.2d 301, 309. As bearing thereon, also see State v. Schmidt, Iowa, 145 N.W.2d 631, 635, as to application of rule 196, R.C.P., regarding the timeliness and form of such a requested instruction.

It is not contended the trial court's instruction was erroneous and, since her complaint made here was too late, we conclude there is also no merit in this assignment.

VI. Our duty here is to determine whether the evidence is sufficient to sustain this verdict. A careful study of the whole record persuades us there was no reversible error and that the defendant had a fair trial. As bearing thereon, see Davis v. Walter, 259 Iowa 837, 844, 146 N.W.2d 247, 252. The judgment must, therefore, be affirmed.

Affirmed.

All Justices concur.